No. 24743.

THE PEOPLE OF THE STATE OF COLORADO *v.* FRED GROVER
ORF, JR., ALSO KNOWN AS FRED ORF.
(472 P.2d 123)

Decided July 13, 1970.

CARL PARLAPIANO, District Attorney, for plaintiff-appellee.

DONALD G. DRUMMOND, for defendant-appellant.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

THIS is an interlocutory appeal under C.A.R. 4.1 from a decision of the District Court, Pueblo County, denying the defendant's motion to suppress evidence and a cross-appeal by the people challenging the correctness of the court's ruling in granting a motion to suppress statements allegedly made by the defendant after arrest and before receiving *Miranda* warnings.

The defendant, by information, was charged with entering a motor vehicle with intent to commit theft in violation of 1967 Perm. Supp., C.R.S. 1963, 40-5-10.

The defendant's conduct, while sitting in a pickup truck parked on a Pueblo street, attracted the attention of Mr. and Mrs. Ryan when they arrived in the area to dine at the China Lantern Restaurant. The defendant was known to Mr. Ryan through prior business transactions. After the Ryans entered the restaurant they continued to watch the defendant, observing that he entered an automobile, took property therefrom, placed it in the truck in which he was first observed, drove the truck a short distance to a parking lot of the Faricy Motor Company, got out, and entered a nearby tavern — Pennies.

One of the Ryans called the police and reported what they had observed.

Two Pueblo police officers, Trujillo and Avery, responded to the call. Upon arriving in the vicinity of the foregoing activities, Officer Avery contacted the Ryans, and Officer Trujillo, after ascertaining ownership of the automobile from which the defendant had removed the articles, contacted a Mr. Belt, the owner.

The police officers were given a rather complete de-

scription of the man who had entered the car and a description and the location of the pickup truck into which the items removed from the automobile had been deposited. They were also advised that the described individual had entered Pennies Tavern.

Armed with this information, the officers went to Pennies Tavern, saw the defendant, asked him if he were the owner of the pickup truck, and, having received an affirmative answer, requested him to step outside. One of the officers then pointed to Orf, and the Ryans, who were still in the restaurant across the street, indicated by nodding their heads that he was the man whose activities they had reported. The trial judge, in reference to this identification, observed that it

"* * * was based largely on the clothing that was worn by the defendant, and, I gather, a rather prominent mustache which adorned his face at that time, together with Mr. Ryan's personal acquaintance with the defendant. * * *"

Following this last identification, the defendant, at the request of the officers, accompanied them to the pickup truck. When asked about the items lying on the floor he disclaimed ownership or any knowledge of them. Defendant was then, according to Officer Trujillo, formally arrested and the items allegedly taken from the Belt car were seized by the police officers. These items were: one black bowling ball (16 pounds); one pair of brown bowling shoes; one pair of white bowling shoes; "any other property seized from one certain International pickup truck on or about the 29th day of November, 1969."

As noted above, the trial court suppressed the *statements* made by the defendant prior to the *Miranda* warnings. At the initial confrontation in the tavern the defendant, in response to an officer's inquiry, admitted the ownership of the pickup truck. Outside the tavern he again admitted the ownership. At truck-side, he denied ownership or any knowledge of the items lying on the floor of his pickup truck. These appear to be the only

statements made by the defendant which are in issue.

The defendant basically advances two arguments in support of his motion to suppress the physical evidence taken from the truck. First, he contends that the information on which the search was based was the result of the defendant's statements made to the officers before he was given *Miranda* warnings, and, secondly, that the search was not incident to his arrest. We note that the officers had no search warrant, nor did the defendant consent to the search of his truck.

## I.

The defendant contends that the evidence seized from the pickup was obtained as a direct result of statements of defendant, which were admittedly taken in violation of his *Miranda* rights; and, therefore, the evidence is the product of illegal police activity and must be suppressed.

The defendant relies on *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, for the proposition that evidence wrongfully acquired may not be used. Numerous state court authorities are cited in support of this proposition, sometimes known as the "fruit of the poisonous tree" doctrine, but since we do not deem them apposite there is no point in citing and discussing or distinguishing them.

We have no quarrel with the doctrine, but we do not agree with the defendant that it is applicable here. To apply the doctrine, the *fruit* of the search must have been obtained as the direct result of a violation of the defendant's constitutional rights — such a violation is said to "taint" the tree and, in turn, "the fruit."

Here, the officers received the information as to defendant's entering the car and taking the property from eyewitnesses and identification of the stolen property from its owner who was also the owner of the car from which the property was taken. This information was obtained by the officers before any contact of the defendant was made by them. This is the type of police investigatory

work that the courts have been trying to achieve, lo these many years. It is difficult to conceive of a situation where a defendant's statements would have a lesser bearing on the identification and seizure of allegedly stolen goods than in this case. The statements were, at most, the "icing" on the cake.

The information on which the search and seizure was predicated was obtained in a lawful manner and not as the result of pre-*Miranda* warning statements, which clearly takes the case outside of the scope of *Silverthorne*.

II.

The defendant maintains that, in the light of the limitations of time and distance imposed on searches incident to arrest by *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, the search was not lawfully incident to the arrest.

The actual distance between Pennies Tavern and the Faricy lot where defendant's truck was parked was about 100 feet. Thus, we have a *distance* factor. The time which elapsed between the officers' contact of the defendant and the seizure of the bowling equipment was a matter of a very few minutes, and, as we view it under the circumstances here, is a material factor in the equation before us; but, because of its briefness, not one which poses a difficult problem.

The trial judge, who refused to suppress the physical evidence, held that the arrest was made in the tavern. The officer who made the arrest thought he had made the arrest truck-side. Under the circumstances of this case, we do not find it essential to resolve this issue. In any event, the arrest was made substantially contemporaneously with the search and seizure.

▋ Here, as in all *Fourth Amendment* situations, we are concerned with the *reasonableness* of a search incident to arrest under all of the surrounding circumstances. Concomitantly, the practicability of obtaining a search warrant under the circumstances of a particular search affects *reasonableness*.

■ The relationship of the place and time of the search to the place and time of arrest, the place to be searched and the nature and scope of the search are factors which must be weighed on the scales of *reasonableness.*

In the instant case, the stolen articles were known to have been placed in a particular vehicle, which was readily movable, and the person known to have stolen the property was in a tavern where his stay was of uncertain duration. The contemplated search was not to be a general exploratory search, but one to recover specific items which the officers had probable cause to believe were in the passenger compartment of the vehicle.

■ The totality of the foregoing circumstances is such that it does not violate the rules of limitation on warrantless searches delineated in *Chimel v. California, supra.* The scope of the search was strictly tied to and justified by the circumstances which rendered its initiation permissible. The search of the vehicle was directly related to the offense for which the defendant was arrested, so we are not confronted with the *Preston* rule. *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

Although we do not have a factual situation comparable to *Cooper,* the philosophy of *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, is applicable to this case. The police here did not take defendant's vehicle into custody as in *Cooper* and in *Stewart v. People,* 162 Colo. 117, 426 P.2d 545, nor was the search made at a time remote from the arrest. Nevertheless, we adhere to the general principles set forth in those cases.

### III.

The district attorney by cross-appeal has challenged the correctness of the trial court's ruling on the suppression of the statements made by the defendant to the police officers prior to receiving the *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

The trial court found that

"* * * the defendant was in custody inside the tavern and was then taken by the officers into the street where a pickup truck was parked and that during this time, before his legal rights had been explained to him, he was asked several questions including one in regard to the ownership of the truck. * * *"

It was this latter statement which the court suppressed.

Under the circumstances of this case the police officers had made a thorough investigation and there could have been little doubt in their minds as to the probability that they had in custody or could immediately place in custody the person who had perpetrated the offense. In fact, Officer Trujillo testified that had the defendant, at any time after the initial contact and before they arrived truck-side, been disposed not to accompany the officers he would have been arrested.

 Under *Miranda* the critical stage is reached when custodial questioning begins. "Custodial interrogation" commences when the police officers initiate their questioning "after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra.* The defendant Orf was effectively deprived of his freedom when the police officers first saw him inside the tavern. They were not at that time conducting a general on-the-scene investigation — that phase of their duties had been completed before they entered the tavern. The investigation at this time "focused" on the defendant and only the defendant. See, also, *Escobdo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

This is not the overreaching type of police interrogation which was responsible for the *Escobedo* and *Miranda* rulings, but the factual situation brings this case within the reach of those decisions. Consequently, we affirm the trial court.

The judgment is affirmed.