534 F.2d 867
 Nancy Ann STEVENS, Appellant,
v.
Honorable Max WILSON, District Court Judge of the Eleventh
Judicial District, Fremont County, Colorado, and Ruth H.
Carter, Chief Probation Officer for the Eleventh Judicial
District, Fremont County, Colorado, Appellees.
 No. 75-1423.
 United States Court of Appeals,
Tenth Circuit.
 Argued Feb. 23, 1976.
Decided March 18, 1976.
 
 Dorian E. Welch, Deputy State Public Defender, Denver, Colo. (Rollie R. Rogers, Colorado State Public Defender, and Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, Colo., on the brief), for appellant.
 Deborah L. Bianco, Asst. Atty. Gen., Denver, Colo. (J. D. MacFarlane, Colorado Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Colorado Sol. Gen., and J. Stephen Phillips, Asst. Atty. Gen., Denver, Colo., on the brief), for appellees.
 Before SETH, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of the district court denying relief in an action filed by appellant seeking pursuant to 28 U.S.C. § 2254 the issuance of a writ of habeas corpus praying for the setting aside of a state criminal conviction for alleged unconstitutionality of the actions of state officers in the arrest and investigation of the case.
 
 
 2
 The petition alleges that on October 27, 1971, the petitioner-appellant was convicted of possession of marijuana in violation of C.R.S. Section 48-5-2, (1963), and of the introducing of contraband into the Colorado State Penitentiary, contrary to C.R.S. Section 40-7-58(2), Perm.Supp. (1967).
 
 
 3
 Trial to the court resulted in appellant's being convicted on both counts. Appellant is not confined but is on probation. On appeal to the Colorado Supreme Court, on December 31, 1973, the conviction was affirmed. See 517 P.2d 1336. The Colorado court's affirmance resulted from the conclusion that the alleged unlawful arrest was not an arrest but rather was a "field investigation." Also rejected was the contention that the confession should have been excluded as the fruit of an unconstitutional seizure.
 
 
 4
 Finally, the petitioner has alleged that her arrest was unlawful and that it tainted her subsequent confession since the confession was the product of the invalid arrest and constituted a violation of the Fourth Amendment as well as the Fifth.
 
 
 5
 The background facts alleged in the habeas corpus petition are that the appellant was detained (following her arrest) in a locked room within the maximum security area of the state penitentiary and was interrogated for at least one-half hour by the deputy warden and three other officers. She claims that the only facts which the officers had then obtained consisted of discovery of three packets of marijuana found in a public restroom in an adjacent park near the parking lot outside the penitentiary. The marijuana was discovered in a garbage can within the restroom after appellant had been there. She alleges that in this setting her confession was obtained and the resultant illegality and inadequacy are relied on as a basis for the demand for release.
 
 
 6
 The respondents-appellees allege supplemental facts, first, that the appellant's visit to the outside restroom of the penitentiary occurred on a cold day and that it is unusual for penitentiary visitors to use the outside restroom facilities. Because, it is explained, the petitioner's visit to the restroom occurred approximately 15 minutes before the penitentiary inmates would be engaged in maintaining the park area where the outside restrooms were located, it was likely that she had made the delivery inasmuch as an inspection had been made shortly before she entered.
 
 
 7
 The opinion of the Colorado supreme court referred to above contains a succinct statement of the essential facts:
 
 
 8
 At approximately 12:45 p. m. on January 18, 1971, defendant, her infant child, and another woman parked their auto in the parking lot outside the Colorado State Penitentiary. They entered a public restroom located on the grounds of the park adjacent to the parking lot. Defendant's companion left the restroom, returned to their car, and then proceeded to the gate of the penitentiary, looking back in the direction of the restroom. Defendant and her child left the restroom, went to the car and then entered the penitentiary.
 
 
 9
 These activities aroused a watch tower guard's suspicion because it was a cold day and during cold weather visitors normally use the restroom inside the penitentiary rather than the restroom in the park. He immediately requested that the restroom be searched. Defendant was the last person to leave the restroom before the search party entered the restroom. The search uncovered six bags of suspected marijuana in the wastepaper basket. This search was conducted between 12:45 and 1:00 p. m. At approximately 1:00 p. m. each day, inmate crews maintain the park.
 
 
 10
 An investigator apprehended defendant and her companion in the lobby of the penitentiary and took them to the conference room. He advised them of their Miranda rights, and told them they were under arrest for possession of marijuana and bringing contraband onto penitentiary property. Defendant shortly thereafter absolved her companion from any part of illegal activities and admitted that she left the marijuana in the restroom as an inmate had instructed her to do. 517 P.2d 1336, at 1337-1338.
 
 
 11
 The Supreme Court's affirmance is based upon its view of the stop and frisk doctrine. It applied the standards contained in the court's decision in Stone v. People, 174 Colo. 504, 485 P.2d 495 (1971), wherein it was ruled the alleged arrest was merely a detention. The judgment was affirmed because there having not been an arrest, and the subsequent confession having been "voluntary", there was no violation of the defendant's rights.
 
 I.
 
 12
 The district court (federal), considering the habeas corpus case, disagreed with the Colorado court's conclusion that the facts of the case brought it within Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. It ruled that there was an arrest which was for the purpose of interrogating appellant and that this was a violation of her Fourth Amendment rights. The trial court went on to hold, however, that this did not control the case inasmuch as voluntariness of the confession was the deciding factor and that this confession was voluntary within the standards established by the Tenth Circuit.[1]
 
 
 13
 We agree with that part of the district court's ruling that the arrest was in fact and law an arrest. This was not any mere detention or preliminary investigation such as that which occurred in Terry, supra. First of all, the appellant was confined within a room in the penitentiary; secondly, she was confronted with the marijuana which had been discovered in the restroom following her visit; thirdly, she was questioned thoroughly and a confession was obtained. The total circumstances thus dispel any notion that this was a Terry -type detention.
 
 
 14
 The district court (federal) failed to consider, however, whether there existed probable cause for the arrest based upon the seizure of the marijuana. Such an independent determination was entirely permissible and indeed was called for under 28 U.S.C. Section 2254.
 
 
 15
 The findings of the Colorado trial court were not entirely in accordance with sub-section (c) of Section 2254, supra. The state trial court ruled:
 
 
 16
 However, the arrest was not unlawful. There was probable cause in that the defendant and her friend, by their conduct, aroused the suspicion of an officer, which caused an immediate search of the rest room and which produced six bags of marijuana. Defendant was identified as being the last person in the rest room prior to the search. Interrogation followed and defendant gave a statement, Peo's. Exhibit D. There is no evidence in the trial showing when defendant was placed under arrest.
 
 
 17
 Section (d)(8) of 2254, supra, requires the federal trial court to examine the state court record in circumstances such as the present and ascertain whether the trial court's factual determination is fairly supported by the record.
 
 
 18
 Whether there is probable cause for the arrest pursuant to the Fourth Amendment is the crucial issue in a habeas corpus case and therefore the trial court should have come to grips with this question.
 
 
 19
 Interrelated questions are presented for our determination: First, whether the arrest in the instant case was ill-founded in that probable cause was lacking, whereby the seizure of appellant's person was in violation of her Fourth Amendment rights or whether probable cause for the arrest did exist so as to render the arrest valid. Second, if it is determined that the arrest was invalid, did the infringement of appellant's Fourth Amendment rights taint the obtaining of the confession within the meaning of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), or were the arrest and confession sufficiently unconnected so that the confession can be judged independently of the Fourth Amendment problem as the trial court did or from the standpoint of possible violation of the Fifth Amendment? Third, should it be determined that arrest was valid, was the confession a voluntary one within the criteria of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)?
 
 II.
 
 20
 Inasmuch as the presence or absence of probable cause is a crucial question in the case, and since it is dependent on a factual determination by the trier of the facts, we are of the opinion that the trial court should consider and determine this issue.
 
 
 21
 The standards applicable to arrest are not different from those applicable to search. The Supreme Court in Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54, 64 (1974) said:
 
 
 22
 "The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' " (Citing Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1963) and other cases.)
 
 
 23
 The standard applied in the search cases is the same. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
 
 
 24
 The evidence indicates that the officer in the tower had the appellant under surveillance throughout; that there had been an inspection of the lavatory immediately before and immediately after appellant entered. If it would appear that she was the only person who could have deposited the marijuana, the issue would be at least a close question demanding careful scrutiny. Conceivably the total evidence amounted to probable cause.
 
 III.
 
 25
 Appellant also argues that the court below erred in judging the admissibility of appellant's confession purely on the basis of voluntariness in the Fifth Amendment sense and without regard to whether the invalidity of the arrest itself resulted in the confession's being invalid. She relies on Wong Sun v. United States, supra, and also a recent decision of the Supreme Court, Brown v. State of Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
 
 
 26
 In the Brown case the defendant was arrested by State officers without a warrant and also without probable cause on a charge of murder. He was taken to a police station and was placed in an interrogation room. Before commencing questioning, Brown was fully warned of his rights under the Miranda doctrine. The police then informed him that they knew of an incident that had occurred in a pool room on May 5, when Brown fired a shot from a revolver into the ceiling. Brown answered "oh, you know about that." The bullet fired into the ceiling was linked up with the bullets which were taken from the body of the victim of the alleged murder. Following that, Brown said that he wished to talk about it and did so. His statement was two pages long and he acknowledged that he aided one Jimmy Claggett in the killing of the victim, one Corpus. A second statement was taken later the same evening and on the occasion of that statement Miranda warnings were again given. The primary question for the Supreme Court was whether Miranda warnings were sufficient to purge Brown's confession of any illegality resulting from the arrest without probable cause. The Court held that the warnings did not per se purge the confession from taints stemming from the illegal arrest. In so holding, the doctrine of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 was applied. Wong Sun had recognized that statements and other evidence following an illegal arrest or search were to be excluded as a violation of the Fourth Amendment. The court's decision in Brown carefully pointed out that the Wong Sun decision was not being extended or enlarged. Thus Brown was not a new decision. It merely ruled that Illinois had not recognized and applied Wong Sun. In the course of its decision certain criteria were enumerated for ascertaining whether a confession had been obtained by exploitation of an illegal arrest. Included among these were whether Miranda warnings had been given.[2]
 
 
 27
 Secondly, the "temporal proximity" of the arrest and the confession.
 
 
 28
 Third, the presence of intervening circumstances.
 
 
 29
 Fourth, "and particularly the purpose and flagrancy of the official misconduct."
 
 
 30
 The Court also said that the voluntariness of the statement is a threshold requirement. Cf. 18 U.S.C. Section 3501. The burden of showing admissibility rests, of course, on the prosecution.
 
 
 31
 At oral argument in this case there was an issue as to whether Brown should be applied retroactively. In our view in order to apply the Brown doctrine it is not necessary to consider whether it should or should not be applied retroactively because in the Supreme Court's view the Brown decision does not announce any new law. It simply clarifies the Wong Sun decision. It cannot be argued therefore that Brown v. Illinois does not apply. It was pointed out that the Illinois court had refrained from applying Wong Sun. This is also true in the case at bar.[3]
 
 
 32
 Our conclusion is then that the trial court erred in merely determining the voluntariness of the confession as a Fifth Amendment problem in failing to to come to grips with the illegality of the arrest and its effect upon the validity and competency of the appellant's confession. The court's action was not unlike that of the Illinois Supreme Court in Brown. The cause then must be remanded for the purpose of careful scrutiny of the evidence bearing on the existence of probable cause and making findings with respect thereto. If it is determined that the arrest was without probable cause and was thus illegal, the validity and competency of the confession must be considered in the light of Brown v. Illinois, supra, and Wong Sun v. United States, supra. In its proceedings the district court is not limited to the record if it is ambiguous. Additional evidence can be considered. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Cranford v. Rodriguez, 512 F.2d 860 (10th Cir. 1975); Kirby v. Sturges, 510 F.2d 397 (7th Cir.), cert. denied, 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975); Hayward v. Johnson, 508 F.2d 322 (3d Cir.), cert. denied, 422 U.S. 1011, 95 S.Ct. 2637, 45 L.Ed.2d 675 (1975); Goodwin v. Smith, 439 F.2d 1180 (5th Cir. 1971); Wyche v. Hester, 431 F.2d 791 (5th Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1192, 28 L.Ed.2d 323 (1971). There is no merit in the contention of Colorado that Brown is being applied retroactively since the decision rests entirely on Wong Sun, supra.
 
 
 33
 The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.
 
 BARRETT, Circuit Judge (concurring):
 
 34
 I concur in the result and all of the matters expressed in the opinion with one exception. I do, however, wish to express the following views.
 
 
 35
 Under the totality of the circumstances reflected by this record, I agree that the detention and the subsequent "in custody" interrogation of appellant leading to her confession cannot be justified by reliance upon the so-called "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Even so, I believe that it is proper to make it clear that this Court has on a number of occasions held that Terry, supra, stands for much more than the rule that a police officer who observes suspicious behavior may, without benefit of a search warrant and lacking probable cause, detain the individual and "frisk" him to determine whether he is carrying a weapon. The justification is predicated upon neutralization of the threat of physical harm. It seems obvious that it was not necessary that the Terry opinion consume 39 pages if the above holding was all that the decision stood for. It did, in fact, recognize that police officials cannot perform the function of protecting persons and their property from the commission of crime if they cannot make reasonable detentions and inquiries. To that extent, of course, the individual's liberty is restrained. The problem in this case is that when the defendant was taken from the lobby of the penitentiary to the conference room she was told that she was under arrest for possession of marijuana and bringing contraband into the penitentiary. Following that notification, defendant was informed of her Miranda rights and questioned. It is because of these particular circumstances that I must agree that Terry does not apply and that the inquiry must instead turn on the question as to whether probable cause existed to support appellant's arrest. In this regard, I see the inquiry as one directed as to whether there was probable cause to believe that appellant deposited the marijuana in the lavatory rather than whether she was the only person who could have done so, or, alternately, if she aided, abetted or advised in the commission of the offense. 8 C.R.S.1973, § 18-1-603.
 
 
 36
 I have expressed strong opinion that voluntariness under the totality of circumstances is the sole constitutional requisite to the admission of an in-custody confession. I agree that Brown v. State of Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) is to the contrary in relation to state prosecutions. The Supreme Court there applied the doctrine announced in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) in holding that a voluntary confession is nonetheless inadmissible in a state criminal prosecution if it follows an illegal arrest or search. Perhaps the Supreme Court will rule likewise in federal prosecutions contrary to my expressed belief that the presence or absence of the various Miranda factors "need not be conclusive on the issue of voluntariness of the confession". United States v. Davis, 456 F.2d 1192 (10th Cir. 1972) (Murrah, Circuit Judge, dissenting); 18 U.S.C.A. § 3501(b).
 
 
 37
 Even though I recognize that Brown, supra, controls, I personally find it impossible to accede to the correctness of a rule which forbids the admissibility of a confession or exculpatory statement made on an unquestionable voluntary basis. I believe that one with guilt weighing heavily on his conscience quite naturally and very often desires to cleanse his conscience by the admission of his wrongdoing with full knowledge that he thereby submits himself to punishment consequences.
 
 
 
 [1]
 Brinegar v. United States, 165 F.2d 512 (10th Cir. 1947); Hollingsworth v. United States, 321 F.2d 342 (10th Cir. 1963); Davis v. United States, 456 F.2d 1192 (10th Cir. 1972); United States v. Smaldone, 485 F.2d 1333 (10th Cir. 1973), cert. denied, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286
 
 
 [2]
 But it was pointed out that this was not the only factor to be considered
 
 
 [3]
 We are mindful that Brown v. Illinois was announced subsequent to the trial court's decision in this case and although Wong Sun stands for the same principle, it is not easy for a trial court to relate it to facts like the present ones