## No. 79SA232

## The People of the State of Colorado v. David Wayne Tooker

(601 P.2d 1388)

Decided November 13, 1979.

John Anderson, District Attorney, Dennis E. Faulk, Deputy, for plaintiff-appellant.

Laurence A. Ardell, for defendant-appellee.

*En Banc.*

JUSTICE GROVES delivered the opinion of the Court.

This is an interlocutory appeal from an order of suppression of evidence by the Fremont County district court. The district court found that there was no probable cause for the warrantless arrest of defendant-appellee, that the circumstances of the arrest did not qualify it as a "Stone area" stop,[1] and that the items seized during the defendant's arrest were not the product of inadvertent observation by an officer in pursuit of a lawful duty, but were the product of an illegal arrest and search. We affirm.

On November 24, 1978 about 3:15 a.m. the Fremont County Sheriff's office in Canon City received a telephone call from a citizen about a possible burglary in progress across the street from his home. The caller related that two persons had been seen driving a pick-up truck, with the lights out, through the well-lighted parking lot of Merlino's Belvedere (a restaurant, cider plant, meat-packing plant and warehouse complex) in Canon City. The caller saw the truck park on the street, a passenger alight therefrom, walk toward the Belvedere and disappear from view into the warehouse area. No one involved in this incident saw that person again. The other occupant of the truck, the defendant, remained in the cab behind the wheel.

Neither the caller nor his wife could identify the persons, get a license plate number, or observe that the two people were violating the law or molesting or threatening any person or property. Furthermore, not until after the following events had unfolded was the caller interviewed by police officers.

A sheriff's deputy was immediately informed of the call. He arrived at the scene within three or four minutes. He testified that he observed the truck at the location described by the caller, and that he stopped his car about thirty feet behind the truck and shined his spot light on it. He saw the defendant slouched down in the seat and ordered him out of the vehicle. The deputy testified that the defendant responded immediately, and that he frisked and handcuffed the defendant. The deputy neither

---

[1] From *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

recognized the defendant nor believed him intoxicated. In response to a question, the defendant told the officer that he had been sleeping. At that time Canon City Police Department officers arrived and the defendant was put into the deputy's car.

After the defendant was secure in the police car, the deputy officer went back to the pick-up truck looking for evidence of a burglary. The deputy's testimony is confused and inconsistent as to the exact chronology and purpose of his actions at this point, but apparently he then entered the cab and took from it two guns and a knife. He later told the defendant he took them temporarily for safekeeping. Either after or simultaneously with removing the guns and knife, the officer shined his flashlight into the cab. He observed several items, none of which was contraband, and among which was a hydraulic-type jack and a fire extinguisher.

One of the Belvedere owners was called to the scene, but could not positively identify the items lying in the truck as his. One of his employees was called, and, after discovering that items resembling those in the truck were missing from the Belvedere warehouse, the employee identified the items in the truck's cab as belonging to the Belvedere's owners. Although the officer had previously opened the truck's passenger door to facilitate inspection of these items, not until they were positively identified did he remove the items from the truck's cab to the police car.

Following the removal, the officer for the first time advised defendant of his constitutional rights under *Miranda.* The defendant denied any knowledge of the items in the truck and declined to respond to further questions, even when he was later taken to the county jail.

The district attorney offered to stipulate at the suppression hearing, and the district court correctly found, that the defendant was arrested at the time he was handcuffed, even though the officers did not so state to the defendant.

The People claim that the deputy was legally authorized to stop the defendant and make a threshold investigation, thereby entitling the officer to search the truck. They base their claim on a belief that the facts surrounding this arrest comprise a "*Stone* area" stop and as such do not amount to a violation of the Fourth Amendment's prohibition against the unreasonable searches and seizures. The People further argue that the officer's flashlight observations from outside the truck of the contents of the cab did not constitute a search, that the seizure of the items was lawful under the plain view doctrine and the automobile exception to the warrant requirement, and that the officer was authorized to seize the items after they had been identified as belonging to another.

### I.

We first address the issue of whether the deputy officer subjected the defendant to a *Stone* stop or to a full-scale arrest.

■ We recognized in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971) that no constitutional violation occurred when a police officer stopped and briefly detained a person for questioning as to his identity or his activity as long as the officer had at least an articulable and reasonable suspicion that the person had committed or was about to commit an offense.

■ When, however, the detention and questioning are more than brief and cursory, as is the case here, there is an arrest for which the officer must then have probable cause, *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *People v. Severson,* 39 Colo. App. 95, 561 P.2d 373 (1977); *People v. Bates,* 190 Colo. 291, 546 P.2d 491 (1976).

■ In the instant case the defendant was detained more than briefly and for purposes far beyond mere identification. There is no doubt that the objective facts known to the officer at the time he subjected the defendant to an arrest did not amount to probable cause. The defendant's warrantless arrest was not valid either as a *Stone* stop or as an arrest founded upon probable cause. Hence, it was unconstitutional and invalid.

## II.

■ The People advance several other arguments in an attempt to validate the warrantless seizure of the items from the defendant's truck. The arguments, however, lack merit for the single reason that the seizure of the evidence directly and immediately resulted from the unlawful arrest. The Fourth Amendment and its implementative child, the exclusionary rule, require suppression of evidence so obtained as the evidence is the "fruit of the poisonous tree," the unlawful arrest. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1913); *People v. Thompson,* 185 Colo. 208, 523 P.2d 128 (1974); *People v. Orf, Jr.,* 172 Colo. 253, 472 P.2d 123 (1970).

Finding the defendant's arrest and the consequent seizure of the items unlawful, we affirm the trial court's suppression of the evidence.

JUSTICE ERICKSON specially concurs.

JUSTICE ERICKSON specially concurring:

The result reached by the majority is wholly consistent with the dictates of the Fourth Amendment. In my view, however, *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971), as it has developed through its progeny, provides a constitutionally invalid basis for making a stop for the purpose of requiring identification. *See People v. Taylor,* 190 Colo. 144, 544 P.2d 392 (1975) (Erickson, J. dissenting); *People v. Montoya,* 190 Colo. 11, 543 P.2d 514 (1975) (Erickson, J. dissenting); *People v.*

*Mathis,* 189 Colo. 534, 542 P.2d 1296 (1975) (Erickson, J. dissenting); *People v. Cruz,* 186 Colo. 295, 526 P.2d 1315 (1974) (Erickson, J. dissenting); *People v. Montoya,* 185 Colo. 299, 524 P.2d 76 (1974) (Erickson, J. dissenting); *People v. Stevens,* 183 Colo. 399, 517 P.2d 1336 (1974) (Erickson, J. dissenting), *rev'd sub nom Stevens v. Wilson,* 534 F.2d 867 (10th Cir. 1976); *People v. Marquez,* 183 Colo. 231, 516 P.2d 1134 (1973) (Erickson, J. dissenting); *People v. Gurule,* 175 Colo. 512, 488 P.2d 889 (1971) (Erickson, J. dissenting).

The Supreme Court of the United States has placed stringent restrictions on investigative stops based on less than probable cause. *See Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Michigan v. DeFillippo,* _____ U.S. _____, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also, Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Serious doubt exists as to the viability of the "*Stone* Stop" in those instances where the stop is not supported by a reasonable and articulable suspicion that a crime has been or is about to be committed by the individual stopped.

The facts in this case establish that an arrest was in fact made. An arrest, if it is to meet constitutional muster, must be based on probable cause. *People v. Bates,* 190 Colo. 291, 546 P.2d 491 (1976).

I concur in the majority's conclusion that an arrest occurred and that the consequent seizure of items located in the truck was invalid.