The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Dana SCHREYER, Defendant-Appellee.

No. 81SA392.

Supreme Court of Colorado,
En Banc.

Feb. 16, 1982.

Alexander M. Hunter, Dist. Atty., Twentieth Judicial Dist., Dennis B. Wanebo, Chief Deputy Dist. Atty., Boulder, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Cary C. Lacklen, Deputy State Public Defender, Boulder, for defendant-appellee.

ERICKSON, Justice.

This is an interlocutory appeal by the prosecution from an order suppressing evidence seized from the trunk of the defendant's automobile and statements made by the defendant to the police. We affirm.

## I.

In the early morning hours of July 6, 1981, Officer Schmidt of the Longmont Police Department was dispatched by a police radio call to investigate a possible car prowler in a residential area of Longmont. When he arrived, he talked with two neighborhood residents, Roberts and Watters, who informed him that they had observed a person "walking around cars in the neighborhood," and that, a short time later, they saw the same person "carry some items to a car" and place them in the trunk. The car then left the area. Roberts and Watters described the car as a "white four-door, probably a Chevrolet [and] possibly an Impala," with a loud muffler. While Officer Schmidt was talking with the two witnesses, one of them said: "There goes the car right now," and pointed at a car which was approximately two blocks from the scene and heading away from them.

Officer Schmidt followed the car and stopped it two or three minutes later. The defendant was the driver and sole occupant of the car. Schmidt asked for and received the defendant's driver's license and car registration and, after returning to his police car to check the defendant's identification and to determine if there were any outstanding warrants for his arrest, radioed for a backup police officer to respond to the scene. A backup officer arrived approximately ten minutes later and spoke briefly with Officer Schmidt and the two witnesses who were also at the scene. Officer Schmidt then advised Schreyer of his *Miranda* rights.[1]

Schreyer waived his rights under *Miranda*. The backup officer then removed an eight-track tape player from the back seat

of the defendant's car and examined it. When questioned about its ownership, Schreyer declared that he "had it for several years." After examining it, the backup officer then put the tape player back in Schreyer's car and went to the rear of the car, where he used a flashlight to look into a three-inch crevice in the trunk lid. Through the crevice he saw a black electronics unit labeled "Realistic," which he believed to be another eight-track tape player. He asked the defendant about the ownership of the tape player in the trunk, and the defendant responded that he had "never owned a Realistic tape player." Schreyer was then asked to consent to a search of his car, and he responded that he would rather talk to a lawyer first. Officer Schmidt then placed Schreyer in handcuffs and directed him to remain in the patrol car. The arrest was made before the police obtained evidence that the defendant had committed a crime.

On July 9, 1981, an information was filed in Boulder District Court charging Schreyer with first degree criminal trespass.[2] Thereafter, Schreyer filed a Motion to Suppress Statement and Evidence which challenged the legality of his detention and the subsequent search of his car. On September 4, 1981, the district judge granted the defendant's motion to suppress, and concluded that the initial stop of the defendant exceeded the limited investigatory detention authorized in *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971), and constituted a warrantless arrest without probable cause. We agree and affirm the ruling of the trial court.

## II.

The question before us is whether the investigatory stop and the subsequent warrantless arrest violated rights guaranteed to the defendant by the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution. In our view, the defendant's arrest was not supported by probable cause. Ac-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Section 18–4–502, C.R.S.1973 (1978 Repl. Vol. 8).

cordingly, the evidence obtained as a result of the defendant's arrest must be suppressed.

### A.

### The Investigatory Stop

The defendant claims that the initial stop was an unreasonable seizure, and the district court upheld his contention that an investigatory stop required probable cause. We disagree. The rationale for an investigatory stop was first set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* upheld the lawfulness of certain brief police stops based upon a standard of less than probable cause for the traditional arrest or custodial interrogation. In determining whether an investigatory stop by police is unreasonable and unconstitutional, the United States Supreme Court adopted a test which balanced the nature and extent of the governmental interests involved in effecting such a stop against the defendant's constitutional right to be free from unreasonable searches and seizures. *Terry* created an exception to the general rule which requires probable cause for an arrest, and the scope of the exception is narrow. *See, e.g., United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

We adopted the rationale of *Terry v. Ohio* in *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971):

> "There is an area of proper police procedure in which an officer having less than probable cause to arrest nevertheless may detain an individual temporarily for certain purposes and not violate the unreasonable search and seizure limitation of the Fourth Amendment." *Id.* at 508, 485 P.2d 495.

*See also People v. Smith*, Colo., 620 P.2d 232 (1981); *People v. Mangum*, 189 Colo. 246, 539 P.2d 120 (1975); *People v. Lucero*, 182 Colo. 39, 511 P.2d 468 (1973).

To protect a citizen's right of privacy, however, police discretion must be limited. The Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution require that specific, articulable, and objective facts indicate that society's legitimate interests demand the seizure of a particular individual. *See, e.g., Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Delaware v. Prouse, supra; People v. Smith, supra.* In *Stone*, we declared that a police officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; the test is whether the facts, viewed as a whole, justify the officer's belief that the individual is engaged in wrongdoing. *Id.* Similarly, the Supreme Court in *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), has defined the factors that create an objective manifestation that the person stopped is, or is about to be, engaged in criminal activity:

> "[T]he totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.... The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers.... The second element ... is the concept that the process ... must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Id.*

The specificity in the information available to a police officer is therefore the touchstone upon which a reasonable suspicion for a legitimate stop and detention is based.

### B.

### Articulable Suspicion vs. Probable Cause

 When to stop a suspect is often a close and difficult decision for the police to make. *People v. Smith*, Colo., 620 P.2d 232 (1981). Officer Schmidt had a factual basis upon which he could predicate a reasonable suspicion that the defendant had committed a crime. Although the information which he received from the two citizen informants fell short of establishing probable cause, it did provide the police with sufficient facts to support an articulable suspicion that a crime had been committed. *See People v. Mathis*, 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Glaubman*, 175 Colo. 41, 485 P.2d 711 (1971). *See also Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Law enforcement officers may make an investigatory stop when objective facts and circumstantial evidence suggest that a particular vehicle was or might be involved in criminal activity. *United States v. Cortez, supra.* Under the facts of this case, the investigatory stop was justified to ascertain what the defendant was doing. *People v. Mangum*, 189 Colo. 246, 539 P.2d 120 (1975); *People v. Mathis, supra.* Taken as a whole, there was a sufficient factual basis to warrant an investigatory stop.

### C.

### The Arrest Was Invalid

We have held that a warrantless arrest must be supported by probable cause, *i.e.*, "[a] court must determine whether the facts available to a reasonably cautious officer at the moment of arrest would warrant his belief that an offense has been or is being committed" by the person to be arrested. *People v. Navran*, 174 Colo. 222, 483 P.2d 228 (1971). Until the police had enough information to give them grounds to arrest the defendant without a warrant, the police activity must be supported, if at all, as an investigatory stop. *See, e.g., Terry v. Ohio, supra; Stone v. People, supra*; section 16–3–103(1), C.R.S.1973 (1978 Repl. Vol. 8). Therefore, it becomes important to identify when probable cause to arrest was established.

 Before the defendant was stopped, neither the witnesses nor the police knew that a crime had been committed. Someone was seen walking around cars at an early morning hour, and placing some items in the trunk of a car, before driving off. In our view, the available evidence did not support a finding of probable cause that a crime was committed. After the defendant's car was stopped and the witnesses identified him to the backup officer as the man who had been walking around cars in their neighborhood, the police had probable cause to believe that the defendant was the person who engaged in the suspicious activity. However, they still lacked the essential element of probable cause to believe that a crime had been committed.

 Any temporary police detention made for the purpose of questioning a suspect who might otherwise escape is limited to determining an individual's identity or obtaining an explanation of his behavior. *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971). *See also* section 16–3–103(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). Although an investigatory stop itself does not constitute an arrest, whenever detention and questioning by a police officer are more than brief and cursory, there is an arrest which must be supported by probable cause. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *People v. Tooker*, 198 Colo. 496, 601 P.2d 1388 (1979). *See also People v. Gouker*, Colo.App., 628 P.2d 149 (1981). The burden of proof is on the prosecution to establish the existence of probable cause to arrest without a warrant. *People v. Eichelberger*, Colo., 620 P.2d 1067 (1980). *See also People v. Traubert*, 199 Colo. 322, 608 P.2d 342 (1980); *People v. Gomez*, 193 Colo. 208, 563 P.2d 952 (1977).

The record is clear that the objective facts known to the officer at the time the defendant was arrested did not amount to

probable cause. An arrest which is not supported by probable cause cannot be legitimized as an investigative stop. *People v. Gomez*, 193 Colo. 208, 563 P.2d 952 (1977). See also *People v. Dauphinee*, 192 Colo. 16, 554 P.2d 1103 (1976).

Accordingly, we affirm the trial court's suppression of the evidence seized and the statements made by the defendant.

HODGES, C. J., and LEE and ROVIRA, JJ., dissent.

HODGES, Chief Justice, dissenting:

I respectfully dissent. As I view the facts, there was a sufficient showing by the prosecution of probable cause to arrest this defendant.

The majority opinion appears to set down a requirement that before probable cause may be shown there must be evidence to establish beyond question that a crime has been committed. In my view, this is too stringent a requirement. In determining whether probable cause exists, the probabilities that a crime has been committed are to be considered. Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution to believe an offense has been committed or is being committed. In dealing with probable cause, as the very name implies, the probabilities that a crime has been committed as shown from the evidence are the elements which must be examined. These involve factual and practical considerations of everyday life on which reasonable and prudent men would act. *People v. Weinert*, 174 Colo. 71, 482 P.2d 103 (1971).

Here, the statements of the two witnesses and their identification of the defendant, coupled with the backup officer's observance of the Realistic stereo set in the trunk of the defendant's car, and the defendant's admission that he never owned a Realistic stereo set provided probable cause in my view.

Based upon this record, I would reverse the ruling of the trial court.

I am authorized to say that Justice LEE and Justice ROVIRA join me in this dissent.