**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Johnny Lee STARK, Defendant-Appellant.**

**No. 82CA0831.**

Colorado Court of Appeals, Div. II.

March 15, 1984.

Rehearing Denied April 26, 1984.

 

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, Colorado State Public Defender, Nicholas R. Massaro, Jr., Sp. Deputy State Public Defender, Grand Junction, for defendant-appellant.

BABCOCK, Judge.

Defendant, Johnny Lee Stark, appeals the judgment of conviction of second degree forgery entered upon a jury verdict of guilty. He contends that the trial court erroneously failed to suppress inculpatory statements which he made to police. We agree and reverse.

The evidence at trial established that Cassandra Chase cashed a $7,825.44 check which had been mailed to Ernest Cordova, but which he never received. Although the check had been endorsed, "pay to the order of Cassandra Chase, Ernest Cordova," Cordova testified that he did not know Chase and had not endorsed the check. When Chase presented the check for payment, a teller advised her that she would need Cordova's permission to cash the check. Chase left the bank and returned with a phone number which she represented as that of Cordova's jobsite. The teller called the number, and a male voice answered. When the teller asked for Cordova, another male came to the phone, identified himself as Cordova, and asked the bank to cash the check and give Chase the proceeds. Acting on this direction, the teller disbursed the funds.

When bank personnel discovered a stop payment order on the check, Officer Pinder, a bank security guard and police officer, decided to investigate. He learned Chase's address, and that she lived with defendant.

Pinder and a bank officer drove to Chase's home to speak with her. No one was home when they arrived, but defendant pulled into the driveway as they were leaving. Pinder approached defendant and asked him his name. Defendant replied, but was unable to produce a driver's license when asked for identification. Defendant told Pinder that he had lost his license, and had not yet replaced it. Pinder testified that he decided to detain defendant and attempt to obtain an inculpatory statement. After Pinder told defendant that he "could be arrested for not having a driver's license," he commenced a pat-down search for weapons and handcuffed defendant.

As defendant was led into the house to wait for Chase, Pinder asked him, "What do you know about the check that Cassandra cashed?" Defendant replied, "Why, is there a problem?" When Pinder informed defendant that the check had been stolen or forged, defendant stated that he gave the check to Chase. Pinder then advised defendant of his right to counsel and to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As they waited for Chase, defendant made another statement implicating himself in the offense.

After waiting for some time, Pinder telephoned a detective from check detail, who directed him to bring defendant to police headquarters. Once there, defendant was given a written *Miranda* advisement, and indicated by his signature that he understood his rights. Although defendant did not sign that portion of the form indicating that he waived those rights, he prepared a written statement which conformed to his earlier oral statements. However, when the detective advised Pinder to prepare an arrest slip, defendant attempted to tear up his statement. The detective retrieved it and subsequently taped it together.

Immediately before trial, defendant moved to suppress both his oral and written statements on the ground that they were the fruits of an illegal arrest and detention; that Pinder had commenced questioning before giving him a *Miranda* advisement; and that his statements were involuntary because they had been induced by a promise that he would not be arrested. After a suppression hearing, the court allowed evidence of the statements to go to the jury, but deferred its ruling until the prosecution's evidence closed. At that time, the court ruled that defendant's statements were voluntary, and that he had not been interrogated until after he had been advised of his rights. The trial court found

that defendant was arrested for operating a vehicle without an operator's license. It then concluded that defendant's first inculpatory statement made while in Pinder's custody gave rise to probable cause for arrest for the forgery.

On appeal, defendant contends that both of his statements were the fruit of an illegal detention, and, therefore, should have been suppressed. We agree.

## I.

■ Probable cause to make a warrantless arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe an offense has been committed by the person being arrested. *People v. Rueda*, 649 P.2d 1106 (Colo.1982). Here, Pinder had ample evidence to believe a forgery had been committed by Chase, and some evidence that one or two males had been involved. However, prior to defendant's first statement only his relationship with Chase connected him with the forgery. This relationship falls short of establishing probable cause to arrest. *See Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); *People v. Branin*, 188 Colo. 235, 533 P.2d 1138 (1975).

■ The trial court determined that defendant's initial statement was made while he was in lawful custody pursuant to a valid arrest for driving without a license. However, §§ 42-2-101(1) and 42-4-1501(1), C.R.S., do not grant the police authority to make an arrest for driving without a license. *See People v. Clyne*, 189 Colo. 412, 541 P.2d 71 (1975). Even where, as arguably occurred here, a defendant is unable to provide satisfactory evidence of identification to the officer, the statute then in effect did not authorize a custodial arrest, but instead provided that the officer escort the individual to the nearest post office and require that he deposit in the mail the amount of the assessed penalty. Colo. Sess.Laws 1976, ch. 170, § 42-4-1501(4)(a) at 816; *see Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

■ The People concede that a violation of § 42-2-101(1) does not normally provide a basis for a custodial arrest. Nevertheless, relying on *People v. Gouker*, 665 P.2d 113 (Colo.1983), they argue that extenuating circumstances validated the arrest in this instance. However, this reliance is misplaced. In *Gouker*, the extenuating circumstance consisted of a valid out-of-state arrest warrant; here, the extenuating circumstances consist of mere suspicions aroused by defendant's relationship with Chase. Therefore, defendant's arrest cannot be justified by his failure to have in his possession a driver's license. *People v. Clyne, supra.*

## II.

The People argue that even if Pinder initially lacked probable cause to arrest defendant for forgery, he had grounds to stop, frisk, and hold defendant until his statement established that probable cause.

■ An investigatory stop is authorized where the totality of the circumstances demonstrate that the detaining officer has an articulable and objective basis for suspecting the particular person stopped of criminal activity. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *People v. Schreyer*, 640 P.2d 1147 (Colo.1982). However, where the purpose and character of the stop exceed that which is reasonable in light of the circumstances, there is an arrest which must be supported by probable cause. *People v. Hazelhurst*, 662 P.2d 1081 (Colo.1983); *Stone v. People*, 174 Colo. 504, 485 P.2d 495 (1971).

■ Here, Pinder was investigating a non-violent crime, and had no independent information on which to base a belief that defendant was armed or dangerous. *See Ybarra v. Illinois, supra; People v. Tooker*, 198 Colo. 496, 601 P.2d 1388 (1979). Therefore, even if we assume *arguendo* that defendant's relationship with Chase was sufficient to support a reasonable and articulable suspicion, the character of the detention was unreasonable in light of its purpose and was beyond the ambit of an

investigatory stop. *People v. Hazelhurst, supra.*

Finally, the testimony of Pinder and the bank officer with respect to Pinder's statements to defendant indicate that the detention was effected in an attempt to extract from him an inculpatory statement, and, therefore, defendant's oral statement is *prima facie* inadmissible. *See McCall v. People,* 623 P.2d 397 (Colo.1981).

### III.

Because it was not obtained by the direct exploitation of an unconstitutional arrest, defendant's second statement might have been admissible if the prosecution met its burden of showing that it was obtained by a means sufficiently distinguishable from the illegality. *McCall v. People, supra.* The circumstances relevant to that determination are: intervening *Miranda* advisements and a valid waiver of rights; temporal proximity of the illegal arrest and the statement; intervening circumstances; and the purpose and flagrancy of any official misconduct. *McCall v. People, supra; see Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Here, although defendant was re-advised of his *Miranda* rights upon his arrival at police headquarters, the evidence indicates that his written statement was closely related in time and by circumstances to his earlier, illegally induced statement, and that the illegal arrest was made for the purpose of inducing that statement. For that reason, the second statement is inadmissible. *McCall v. People, supra.*

The judgment of conviction is reversed, and the cause is remanded for new trial.

BERMAN and KELLY, JJ., concur.