The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Stephen SPARKS, a/k/a Stephen T. Sparks, a/k/a Stephen Sparrs, a/k/a Steven Sparkes, Jr., Defendant–Appellee.

No. 87SA192.

Supreme Court of Colorado.

Jan. 25, 1988.

Robert R. Gallagher, Jr., Dist. Atty., James J. Peters, Chief Deputy Dist. Atty., David C. Lugert, Bruce H. Rabun, Deputy Dist. Attys., Littleton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender Michael J. Heher, Deputy State Public Defender Denver, for defendant-appellee.

VOLLACK, Justice.

The People bring this interlocutory appeal following a ruling by the Arapahoe County District Court which ordered suppression of the defendant's confession and suppression of certain evidence seized after the confession. The trial court applied an incorrect standard in ruling on the motion to suppress the confession. For that reason, we reverse and remand with directions to the trial court to apply the correct standard for determining whether the defendant's confession was voluntary.

I.

On October 28, 1986, a woman's body was found in a model townhome in Aurora, Colorado. At the time of her death, the victim was in the business of showing and selling the townhomes. The victim had been gagged, blindfolded, bound with stereo speaker wire, raped, and shot in the head several times. The next day, the Aurora Police Department obtained a warrant for the arrest of the defendant-appellant,

Stephen Sparks (hereinafter the defendant). The police also obtained warrants to search the defendant's car and apartment. After obtaining the warrants, the defendant was arrested at his apartment and transported to the Aurora Police Department. He was charged with first degree murder, felony murder, first degree sexual assault, aggravated robbery, theft, and crime of violence.[1]

Upon his arrival at the Police Department, the defendant was taken to an interview room where he was met by Detective Stine. Stine informed the defendant that he was under arrest for first degree murder and advised the defendant of his *Miranda* rights. The defendant agreed to waive his *Miranda* rights and speak with Detective Stine. After discussions between the defendant, Stine, and the defendant's girlfriend (who was being questioned in another room), Detective Stine testified that the following exchange took place.

> He [the defendant] was quiet for a few minutes, and then he said, "Hypothetically, if I tell you the whole story about what happened, will Bonnie Armstrong [the defendant's girlfriend]—can we keep Bonnie Armstrong out of the media and away from the papers and TV?" He didn't want her involved with the media; he didn't want her all over the newspapers.
>
> I told him that as far as I was concerned, that she was not directly involved in the homicide and that the police department's point of view was we were not going to release any information about her to the media, we had no reason to, but that if Bonnie wanted to go to the media, that was up to her.

The defendant then confessed that he had murdered the victim.

The defendant's testimony was that he first told Stine that he was speaking "hypothetically, off the record," by which he meant "just between me and [Stine], and no one else." The defendant testified "I told [Stine] I wanted an agreement that he would not involve Bonnie into this case at all." He testified that Stine's response was: "[Stine] told me that he didn't see any reason for her to be involved in this case, whatsoever, and that if she wanted to do something and all, then it could be brought upon her ownself to come—so therefore she was not involved, and he would see to it."

Stine testified that he then advised the defendant that police officers were at his apartment with a search warrant and he "asked [the defendant] where the gun was that was involved in this." According to the detective, the defendant said that the gun "was in a briefcase in the closet, and that the bag that [the defendant] had told me before that he found in the [victim's] office was also in the closet with the jewelry in it."

The defendant filed a motion to suppress his confession as involuntary due to coercion, and a motion to suppress the evidence seized after his confession. At the hearing, defense counsel argued that the confession should be suppressed because it was involuntary. On the basis of the testimony set forth above, the trial court ruled as follows regarding the confession:

> The Court finds that police officer Stine led the defendant to believe that Bonnie Armstrong would be kept out of a police investigation and kept from exposure to the press and to the media. The defendant, the Court finds, relied on the assurances of police officer Stine. And in reliance on those assurances the defendant agreed to make statements to the police officers. Under the doctrine of the *People v. Manning* the confession of the defendant and all statements made by him to police officers at the Aurora Police Department are suppressed.

On the issue of the evidence that was seized after the confession, the trial court also ruled:

---

1. The defendant was charged with violation of the following statutes: § 18–3–102(1)(a, b) 8B C.R.S. (1986) (first degree murder and felony murder), § 18–3–402, 8B C.R.S. (1986) (first degree sexual assault), § 18–4–302(1)(b), 8B C.R.S. (1986) (aggravated robbery), and § 16–11–309, 8A C.R.S. (1986) (mandatory sentencing for violent crimes).

Evidence seized from the home of the defendant following telephone communications from police officer Stine to police officers on the scene at the home of the defendant are also suppressed as fruits of the poisonous tree.

The trial court did not address the fact that the police officers were already searching the defendant's apartment pursuant to a valid search warrant at the time of the defendant's confession. The issue presented in this interlocutory appeal is whether the trial court correctly suppressed the defendant's confession and the evidence seized from his apartment after his confession.

## II.

### A.

■ A confession cannot be admitted into evidence unless it is voluntary. *Espinoza v. People*, 178 Colo. 391, 497 P.2d 994 (1972). In ruling on the voluntariness of a confession, the trial court must make findings of fact and law that the confession was voluntarily given with full understanding of the accused's rights. *Id.* at 396, 497 P.2d at 996. The trial court is required to assess "the totality of the circumstances" in deciding whether a particular defendant has knowingly and voluntarily relinquished his rights. *People v. Thorpe*, 641 P.2d 935, 941 (Colo.1982). The prosecution has the burden of establishing voluntariness by a preponderance of the evidence. *Id.*

■ The trial court here applied *People v. Manning*, 672 P.2d 499 (Colo.1983), in ruling on the admissibility of the defendant's confession. This reliance on *Manning* was misplaced: the issue in *Manning* was "whether Manning's 'confession' should be admitted or excluded ... on the basis of the bargain struck by the government and *not the voluntary or involuntary nature of her statements.*" 672 P.2d at 506 (emphasis added). In *Manning*, the court expressly stated: "[T]he question of whether Manning's 'confession' was voluntary or involuntary is not before this court." *Id.* The *Manning* standard applies when the remedy of suppression will not secure fundamental fairness to a defendant who, in reliance upon a governmental promise, has taken some detrimental action in reasonable expectation of receiving the benefit promised by the government. Because the remedy sought here by the defendant was the suppression of his confession on grounds of voluntariness, *Manning* does not apply.

■ On remand, the voluntariness of the defendant's confession should be determined based on the totality of the circumstances. One of the circumstances to be weighed is "the occurrences and events surrounding the confession, including the presence or absence of official misconduct." *People v. Freeman*, 668 P.2d 1371, 1378 (Colo.1983). Psychological pressures may "induce [a] confession, and under some circumstances may render it involuntary." *Id.* at 1379. Whether the alleged promise by Detective Stine rises to the level of coercion that would render the defendant's confession involuntary is a question for the trial court's consideration on remand. *Id.* at 1378–80. *See Colorado v. Connelly*, —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Id.* 107 S.Ct. at 523.)

### B.

■ The trial court's suppression of certain items of evidence that were seized during the search of the defendant's apartment, after he confessed to the murder, was based on the "fruit of the poisonous tree" doctrine. This doctrine requires the suppression of evidence "obtained as the direct result of a violation of the defendant's constitutional rights." *People v. Vigil*, 175 Colo. 373, 379, 489 P.2d 588, 590 (1971) (quoting *People v. Orf*, 172 Colo. 253, 257, 472 P.2d 123, 125 (1970)). *See also People v. Briggs*, 709 P.2d 911 (Colo. 1985); *People v. Hogan*, 649 P.2d 326 (Colo.1982). Where a confession is involuntary, hence in violation of a defendant's constitutional right, then evidence seized as a direct result of the confession must be

suppressed unless "the allegedly tainted information was in fact obtained by officers from independent, lawful sources apart from the defendant's statements." *Vigil*, 489 P.2d at 590.

Because we have reversed the trial court's suppression of the confession, we must also reverse the suppression order as to the evidence seized relating to the confession because the second ruling was based on the first. If, on remand, the trial court holds that the confession was voluntary, then the evidence in question cannot have been tainted by an involuntary confession. If the court determines that the confession was involuntary, then it must reassess the seizure of the evidence to determine whether the seizure was supported by a valid search warrant, or was tainted as the result of an involuntary confession.

We reverse and remand for proceedings by the trial court consistent with this opinion.