**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**John R. GOUKER, Defendant-Appellant.**

**No. 78–812.**

Colorado Court of Appeals, Div. III.

Jan. 22, 1981.

As Modified on Denial of Rehearings Feb. 26, 1981.

Certiorari Granted May 4, 1981.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., John Daniel Dailey, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, James England, Deputy State Public Defender, Steven H. Denman, Deputy State Public Defender, Denver, for defendant-appellant.

KELLY, Judge.

The defendant was convicted by a jury of second degree kidnapping and third degree assault. He seeks reversal on the grounds that the trial court erred in finding probable cause to support his arrest and in failing to suppress the following evidence: (1) identification testimony based on a photograph of him taken after the arrest, (2) statements made immediately following his arrest, and (3) a t-shirt identified by the victim as being like the one worn by her assailant. We reverse and remand for a new trial.

The victim was a six-year-old girl who was awakened at approximately 3:30 a. m. by a man knocking on the front door and on her window. The child let the man into the house because he said that he was her uncle. After being in the house a short time, he picked her up and carried her outside. The man carried her down the street, dropped her, struck her, and left.

The youngster described her assailant to investigating officers as a white male, and related that he had said, "I'm your uncle and I know your mother is Linda." The victim's mother was named Dennine. The following day, the officers discovered that John Gouker was related in some degree to a former resident of the victim's house named Linda.

That evening, two police officers contacted Gouker at work. Gouker accompanied the officers to a nearby office, where he was given his *Miranda* warnings, questioned for approximately 45 minutes, and then told he was under arrest.

The detention of Gouker was beyond the ambit of a *Stone* stop. He was detained more than briefly and for purposes beyond identification. *See People v. Tooker*, Colo., 601 P.2d 1388 (1979). In order for the detention of Gouker to be valid under

the Fourth Amendment, probable cause must have been present at the time he was taken to the office for interrogation. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Probable cause exists where the facts and circumstances are sufficient to warrant a man of reasonable caution in believing both that an offense has been committed, and that it was committed by the person to be arrested. *People v. Saars*, 196 Colo. 294, 584 P.2d 622 (1978); *People v. Bates*, 190 Colo. 291, 546 P.2d 491 (1976). Here, there were no facts known to the police when they detained Gouker connecting him to the scene of the crime at or near the time of its commission. Therefore, probable cause to detain Gouker was lacking.

■ The question remains whether the evidence obtained as a result of the illegal detention must be suppressed. Evidence will not be suppressed if the causal connection between the illegality and the evidence is sufficiently attenuated to remove its primary taint. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Factors to be considered in making this determination include the lapse of time, the presence of intervening circumstances, and the flagrancy of the police conduct. *See Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Corbett*, 190 Colo. 388, 547 P.2d 1264 (1976).

■ In reviewing these factors, we conclude that the identification of Gouker based on a photograph taken by the police shortly after he was taken· to the police station must be suppressed. This photograph was included in an array which was shown to the victim for pretrial identification. Thus, there was a close temporal proximity between the illegality and the evidence obtained, and the record shows no intervening circumstance to remove the taint of the illegal conduct.

The People argue that, because a person has no reasonable expectation of privacy in his facial appearance, the taking of a photograph is not a constitutionally prohibited seizure which is subject to the exclusionary rule. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). We disagree.

The photograph was obtained as a result of an illegal seizure, and we see no practical distinction between a fingerprint, *see Davis v. Mississippi*, 394 U.S. 721, 728, 89 S.Ct. 1394, 1398, 22 L.Ed.2d 676, 681 (1969), and the photograph evidence used in this case. Therefore, the rationale of *Davis v. Mississippi, supra*, requires that the pretrial identification of the defendant by the victim be suppressed. *See Beightol v. Kunowski*, 486 F.2d 293 (3rd Cir. 1973); *W. LaFave, Search & Seizure* § 11.4(g) (1978). It does not necessarily follow from the illegal detention that the victim's in-court identification also must be suppressed. On retrial, the in-court identification may be admitted if it is shown that the victim's courtroom identification rests on an independent recollection of her initial encounter with the assailant, uninfluenced by the tainted pretrial identification. *See United States v. Crews*, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).

■ The inculpatory statements made by Gouker shortly after he was detained must also be suppressed. The People do not argue that the taint of the illegal detention was dissipated. *See People v. Moreno*, 176 Colo. 488, 491 P.2d 575 (1971); *People v. Robertson*, 40 Colo.App. 386, 577 P.2d 314 (1978). On retrial, therefore, these statements cannot be used in the prosecution's case-in-chief. *Cf. United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980).

The trial court did not rule on the admissibility of the t-shirt. Since the trial court is the fact-finder, *see Huguley v. People*, 195 Colo. 259, 577 P.2d 746 (1978), the issue may be addressed on retrial.

In view of our conclusion, we do not address the defendant's argument that there was insufficient evidence to support his conviction. *See People v. Sisneros*, Colo. App., 606 P.2d 1317 (1980).

The judgment is reversed and the cause is remanded for a new trial consistent with the views expressed herein.

KIRSHBAUM, J., concurs.

STERNBERG, J., dissents.

STERNBERG, Judge, dissenting.

I respectfully dissent.

I accept the inference in the majority opinion that *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), leads to the conclusion that Gouker was under arrest during the police interrogation. However, I would hold that the police did have sufficient information linking Gouker to the crime to constitute probable cause to arrest him. Thus, incriminating evidence obtained as the result of the arrest should not be suppressed.

The young victim of the crime told the officers that she had been assaulted by a white male who said, "I'm your uncle and I know that your mother is Linda." Linda was not the name of the victim's mother; however, in the course of their investigation, the police learned that Gouker was related to a former inhabitant of the victim's residence bearing that name. Based upon that information the police contacted Gouker, advised him of his *Miranda* rights, and interrogated him. Gouker elected neither to remain silent, nor to request that an attorney be appointed. Instead he made incriminating statements. Holding these statements to have been illegally obtained and therefore reversing the conviction serves unnecessarily to punish good, intelligent police work.

In my view it is necessary to balance conflicting interests in cases of this type: the risk of police interference with the liberty of innocent persons must be weighed against the public interest inherent in identifying violent criminals. *See Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Watts v. Indiana*, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949). *See also* 1 W. LaFave, *Search and Seizure* § 3.2 (1978).

The presence or absence of probable cause for an arrest must be determined according to the circumstances of each case. *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974). Here, when the police contacted Gouker they were acting on "more than a bare suspicion" that he had committed the crime. *Brinegar, supra.* The focus of their inquiry was sufficiently narrow to minimize the risk of arresting an innocent person.

There is no constitutional requirement that information concerning the offender available to police at the time of arrest point exclusively to a single individual or that it be more probable than not that the suspect committed the crime. *See* 1 W. LaFave, *Search and Seizure, supra.* Indeed, to require such a degree of certainty would tend to equate the probable cause necessary to sustain an arrest with that probable cause required to charge a person with a crime.

A legitimate police function is served by permitting lawful custodial arrests where, as here, application of a balancing test reveals that police action was reasonable. The exclusionary rule is "not intended as a barrier to prevent the police from carrying out their functions and duties when the police action is reasonable." *People v. Eichelberger*, Colo., 620 P.2d 1067 (1980).

Moreover, regardless of the correctness of the views expressed above, I do not agree with the conclusion of the majority that *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), requires suppression of in-court identification based upon the photographs taken of Gouker at the police station.

For these reasons, I would affirm the conviction.