**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Paul Alan BRIGGS, Defendant-Appellant.**

No. 81CA0152.

Colorado Court of Appeals, Div. III.

Feb. 24, 1983.

Rehearing Denied March 24, 1983.

Certiorari Granted Aug. 29, 1983.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sp. Asst. Atty. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Gerash & Robinson, P.C., Scott H. Robinson, Denver, for defendant-appellant.

KELLY, Judge.

The defendant, Paul Briggs, was convicted by a jury of first degree murder. The primary question on appeal is whether the extrajudicial statements of Kirk R. Martin, his trial testimony, and the tape-recorded conversation between Martin and the defendant must all be suppressed as derivative evidence from the defendant's concededly illegally-obtained statements or whether the trial court correctly found sufficient attenuation to dissipate the taint. Error in the suppression rulings requires reversal and remand for a new trial.

On November 30, 1979, Harry Dewey's body was found by a hunter in the mountains between Sedalia and Deckers, Colorado. Death was caused by a gunshot wound to the head. The police knew when the homicide investigation began that Dewey had been involved in the burglary of a mountain cabin, and that Dewey might have been killed with a gun stolen in that burglary.

Special Crime Attack Team (SCAT) officers interviewed the defendant, who was Dewey's former roommate, on December 20. He was given *Miranda* warnings and told that he was suspected of burglary, theft receiving, and murder. At this interview, the defendant told the police that he knew that the property found in Dewey's apartment was stolen. SCAT officers reinterviewed him on January 4 and 5, 1980. The defendant was not readvised of his *Miranda* rights before these interviews. Based on a promise of immunity from prosecution for burglary of the mountain cabin, the defendant divulged, among other things, that Kirk Martin had taken some of the stolen property to Indiana.

Armed with this information from the defendant, the police interviewed Kirk Martin. Martin told SCAT officers he had taken some of the items to Indiana to sell to a Bill Neeley there. On January 8, SCAT officers flew to Indiana and learned from Neeley that Martin and a man referred to as "the mountain man" had formulated a plan to kill "Gator" (Dewey's nickname).

On January 9, the officers told Martin that they suspected him of the Dewey murder. Confronted with this information, Martin implicated the defendant in the murder by identifying him as "the mountain man," and the police offered immunity from prosecution to Martin if he were able to pass a polygraph test. After two polygraph tests given on January 10 and 11 registered deceptive responses, Martin agreed to be wired for sound and to engage the defendant in a recorded conversation. In the tape-recorded conversation of January 14, the defendant and Martin discussed the murder weapon and its hidden location in relation to the body.

It is uncontroverted that the statements made by the defendant during the January interviews by the officers were illegally obtained and that the trial court properly suppressed certain derivative evidence as "fruits of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Fisher,* 657 P.2d 922 (1983). The defendant argues that all of Kirk Martin's statements to the police, his trial testimony, and the tape-recorded conversation must also be suppressed as having been derived from the defendant's illegally obtained statements. We agree.

■ The People bear the burden of establishing that the evidence obtained from Martin was not obtained through exploitation of the defendant's illegally obtained statements. *See Harrison v. United States,* 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *People v. Lowe,* 200 Colo. 470, 616 P.2d 118 (1980). The presence of an inter-

vening circumstance is one factor to be considered in determining whether the causal connection between the illegality and the evidence sought to be admitted is sufficiently attenuated to remove the primary taint. *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *People v. Gouker,* 628 P.2d 149 (Colo.App.1981).

Here, the police learned from the defendant's January statement, for the first time, that there was illegal activity in Indiana in connection with the burglary. By following this lead, they elicited from Martin the identity of Bill Neeley in Indiana. Neeley then implicated both Martin and the defendant in Dewey's murder. Using this incriminating information to confront Martin with a possible murder prosecution, the police extracted statements from Martin implicating defendant in the murder. Thus, the road from the defendant's January statements to Martin's statements implicating the defendant is direct and uninterrupted. *See United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

The trial court reasoned, nevertheless, that Martin's decision to testify was in his own self-interest and was, therefore, an intervening independent act sufficient to attenuate the taint. *People v. Saiz,* 620 P.2d 15 (Colo.1980). We do not agree with this analysis.

■ While it is true that an independent intervening event may decontaminate the evidence, *People v. Saiz, supra,* where a witness' decision to testify is induced by a grant of immunity from prosecution, the compelled testimony is not such an act of free will as to dissipate the taint arising from a prior illegality. *See United States v. Scios,* 590 F.2d 956 (D.C.Cir.1978); *People v. Lee,* 630 P.2d 583 (Colo.1981).

■ The People's arguments that the police had pursued an independent trail and that the normal course of investigation would ultimately have disclosed the incriminating evidence were not presented to the trial court, and, since these arguments require fact-findings, the issues have not been properly preserved for review.

The People also argue that this is a case for the application of the principles espoused in *United States v. Williams,* 622 F.2d 830 (5th Cir.1980) and *United States v. Brookins,* 614 F.2d 1037 (5th Cir.1980). While it may ultimately be the law of Colorado that the exclusionary rule is not to be applied when police action is reasonable, *see People v. Quintero,* 657 P.2d 948 (1983); *People v. Eichelberger,* 620 P.2d 1067 (Colo. 1980), we are unable to say here, as a matter of law, that the conduct of the police was reasonable investigation.

■ We conclude, therefore, that Martin's extrajudicial statements, his trial testimony, and his tape-recorded conversation with the defendant must be suppressed. In view of this conclusion, it is not necessary to reach the defendant's other arguments.

The judgment is reversed and the cause is remanded for a new trial.

KIRSHBAUM, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent.

The trial court correctly refused to suppress the witness Kirk Martin's statements to the police, his trial testimony, and the tape-recorded conversation with defendant Briggs.

*Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) is dispositive here. *See also United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). In *Tucker,* in the course of police interrogation while he was under arrest and in custody on a charge of rape, defendant Tucker furnished the name of an alibi witness previously unknown to the police. The witness' later statements discredited Tucker's account as to where he spent the night of the crime. Because he had not been advised of his right to appointed counsel, Tucker's own statements were excluded by the trial court, but the testimony of the

witness was not excluded. The Supreme Court upheld the trial court's action.

In the instant case, different from *Tucker,* Martin was not a witness discovered as a result, and his testimony was not a "fruit," of Briggs' January 1980 statements. Martin's identity and his probable involvement in the burglary and subsequent murder became known to the police in December 1979 at the same time they learned about Briggs. Three times in December, Martin and Briggs were questioned concerning their relationship with the deceased Dewey. At that time, Martin admitted having a camera that had belonged to Dewey. It is reasonable to assume that the testimony ultimately elicited from Martin would have been obtained in any event in the normal course of police investigation. *See People v. Lee,* 630 P.2d 583 (Colo.1981).

In December, in statements he concedes were voluntary, Briggs admitted that he knew about the burglary and had helped Dewey move some of the stolen items to Briggs' residence. Prior to these admissions, Briggs had been given full *Miranda* warnings and had been advised that he was suspected of being involved in the burglary, in theft by receiving, and in the Dewey murder. In his January statements, in which he confessed to the burglary after being offered immunity from prosecution therefor, Briggs told the police about Martin's having taken some of the stolen items to sell in Indiana. But, as found by the trial court, this dealt only with the burglary; everything thereafter was obtained from further interrogation of Martin. And, it was from the Martin interrogations, the leads therefrom, and Martin's cooperation that further evidence was obtained about the Dewey murder and Briggs having been the killer.

Although Briggs had been advised back in December that he was a murder suspect and had been given full *Miranda* warnings at that time, and prior to his January statements he had been promised immunity from prosecution for burglary (which promise was kept), Briggs' own January statements concerning the burglary were excluded at his trial for murder. Whatever the validity of that ruling, there was and is no persuasive reason here for excluding Martin's testimony, much less for reversing the conviction because the testimony was admitted.

"Before we penalize police error ... we must consider whether the sanction serves a valid and useful purpose." *Tucker, supra.* Whatever deterrent influence on future police conduct the exclusion of Briggs' statements might have, it would not be significantly augmented by excluding the testimony of Martin as well. *Tucker, supra.* Further, there was no reason to believe that Martin's testimony was untrustworthy simply because Briggs had not been readvised of his rights; Martin's reliability was subject to the normal testing process of the adversary trial. *Tucker, supra.*

I agree with Justice White's statement in his concurring opinion in *Tucker, supra,* and this should be the rule of the instant case:

> "*Miranda* having been applied in this Court only to the exclusion of the defendant's own statements, I would not extend its prophylactic scope to bar the testimony of third persons even though they have been identified by means of admissions that are themselves inadmissible under *Miranda.* The arguable benefits from excluding such testimony by way of possibly deterring police conduct that might compel admissions are, in my view, far outweighed by the advantages of having relevant and probative testimony, not obtained by actual coercion, available at criminal trials to aid in the pursuit of truth."

Since Briggs' other contentions on this appeal are without merit, I would affirm the judgment of conviction.