**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Matthew Kyle MOUNTS, Defendant–Appellee.**

**No. 90SA208.**

Supreme Court of Colorado, En Banc.

Dec. 17, 1990.

Robert R. Gallagher, Jr., Dist. Atty., Paul A. King, Chief Deputy Dist. Atty., Brian K. McHugh, Deputy Dist. Atty., Castle Rock, for plaintiff-appellant.

David A. Lane, Denver, for defendant-appellee.

Justice ERICKSON delivered the Opinion of the Court.

The prosecution has taken a second interlocutory appeal to review pretrial suppression orders entered by the trial court. In *People v. Mounts*, 784 P.2d 792 (Colo.1990) (*Mounts I*), we reversed an order suppressing Mounts' statement made on March 18, 1987, and his subsequent statements, and remanded the case to the trial court for further proceedings consistent with our opinion. We specifically directed the trial court to examine the statements made subsequent to March 18, 1987, to determine their independent admissibility.

After our remand, a second interlocutory appeal was taken by the prosecution when the trial court entered an order on May 7, 1990, suppressing statements made by Mounts on May 29, 1987, and February 23, 1988. We now dismiss the second interlocutory appeal. (*Mounts II*)

I

Matthew Kyle Mounts, through his counsel, initiated contact with the district attorney for the Eighteenth Judicial District and entered into a cooperation agreement. The cooperation agreement was intended to prevent charges from being filed against Mounts for his involvement in the shooting death of Vernon Rouillard. Mounts and his counsel claimed that at most Mounts was involved only as an accessory after the fact. On March 26, 1986, Mounts said he went to the mountains in Douglas County with Vernon Rouillard, Greg Leber, and Doug Osborn. He said that while in the mountains, Osborn unexpectedly shot Rouillard in the back with a 30.06 rifle and that he, Mounts, assisted in burying Rouillard. Mounts maintains that he helped Leber bury Rouillard only because of threats from Osborn. Since Mounts denied active involvement in the killing, the prosecution initially treated Mounts as a witness, and not as an accused or as a suspect. As a result, counsel for Mounts and the district attorney entered into the following letter agreement dated March 5, 1988:

1. That your client direct us to the body whenever weather conditions permit.

2. That your client take and pass a polygraph test which determines that he is truthful in that his only involvement in the killing was as an accessory after the fact in the disposal of the body.

3. That your client does everything necessary to recover the murder weapon.

4. That your client testify truthfully at all hearings.

If your client satisfies all of the above conditions, we would not prosecute him as an accessory after the fact for this murder.

*Mounts I,* 784 P.2d at 794.

After the cooperation agreement was explained to Mounts, Mounts and his attorney met with the district attorney on March 18, 1987, for an extended interview. When Mounts made his initial statement on March 18, 1987, he was in jail in Pueblo, Colorado, awaiting sentencing on his guilty plea to an unrelated robbery charge.

Thereafter, pursuant to the cooperation agreement, Mounts made a series of statements, provided the names of witnesses, assisted investigators in locating the body, and took two lie detector tests. The first lie detector test was inconclusive, but Mounts failed the second. Mounts was never told, however, that the cooperation agreement was no longer in effect because he failed the lie detector test or for any other reason. The information provided by Mounts led to the conviction of Leber for murder in the second degree and to the conviction of Osborn as an accessory to murder. On February 26, 1988, murder and conspiracy charges were filed against Mounts.

The first interlocutory appeal was taken after the trial court granted a motion to suppress Mounts' March 18, 1987, statement and his subsequent statements because Mounts was not given a *Miranda* warning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On January 16, 1990, we reversed the trial court's suppression order and remanded the case to the trial court for further consideration consistent with our opinion. *Mounts I.* On March 2, 1990, the trial court conducted a further hearing on all statements made after the March 18, 1987, interview, took the suppression issues under advisement, and set the trial for May 8, 1990. No decision was made by the trial court on the suppression issues until immediately before trial. On May 3 or 4, 1990, the trial court's clerk advised counsel by telephone that all the defense motions to suppress were denied. On May 8, 1990, trial commenced, and two days were spent in jury selection before the trial court provided counsel with a copy of a written order dated May 7, 1990, that suppressed the statements made by Mounts on May 29, 1987, and February 23, 1988. When the district attorney was advised of the May 7, 1990, order, he told the trial court that he intended to take an interlocutory appeal to review the suppression of the two statements. The trial court then discharged the jury to permit an interlocutory appeal.

## II

■ An interlocutory appeal by the prosecution must be timely and must involve evidence that constitutes a substantial part of the proof against the defendant. C.A.R. 4.1(a) requires that an interlocutory appeal under Crim.P. 41(g) must be made in advance of trial. In this case we cannot penalize the prosecution for failure to take an interlocutory appeal before trial commenced because the prosecution did not know that the court had suppressed two of Mounts' statements. The delay in taking the appeal is attributable to the trial judge. The trial court spent two days in jury selection before counsel learned that the court had suppressed the two statements in issue. In our view, the appeal is timely because of the difference between the clerk's advisement that all motions to suppress were denied on May 2 or 3, and the trial court's written order on May 7, 1990.

■ Pursuant to C.A.R. 4.1, the prosecution certified that the suppressed statements were a substantial part of the proof of the charges against the defendant. Nothing in the May 29, 1987, or the February 23, 1988, statements by Mounts, however, set forth facts that had not previously been disclosed by Mounts in other state-

ments. The suppressed statements are nothing more than a reiteration, with variations, of Mounts' March 18, 1987, statement and other statements by Mounts that have not been suppressed. The trial judge, after our remand in *Mounts I*, conducted an extensive hearing and suppressed the May 29, 1987, and February 23, 1988, statements, but denied the motion to suppress all other statements made by Mounts.[1]

## A

The trial court suppressed the May 29, 1987, statement based on its finding that Mounts did not "intelligently, knowingly and voluntarily" waive his right to counsel and to remain silent. The court said the issue was whether Mounts' lack of knowledge regarding the status of the cooperation agreement rendered his waiver involuntary.

The court relied on *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1960), which held that the focus of the involuntariness question is "whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth."

 In Colorado, voluntariness "should be determined based on the totality of the circumstances," including "the occurrences and events surrounding the confession," and "the presence or absence of official misconduct." *People v. Sparks*, 748 P.2d 795, 797 (Colo.1988); *see also People v. Freeman*, 668 P.2d 1371, 1378–79 (Colo. 1983). "Psychological pressures may induce [a] confession, and under some cir-

cumstances may render it involuntary." *Sparks*, 748 P.2d at 797 (citations omitted).

The trial court also suppressed the February 23, 1988, statements, because Mounts had not been given *Miranda* warnings prior to his interrogation.

## B

Although we may not agree with the trial court's reasoning, we recognize there is evidence in the record to support the trial court's findings of fact. We conclude, however, that neither statement constitutes a substantial part of the prosecution's proof of the charge as required by C.A.R. 4.1 (state must certify to the supreme court that the appeal is not taken "for purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant"). *See People v. Garner*, 736 P.2d 413, 414 (Colo.1987); *People v. Valdez*, 621 P.2d 332, 333 (Colo. 1981). Under *Garner*, the prosecution's brief and the record must support the certification that the statements are a substantial part of the evidence. *Garner*, 736 P.2d at 413. The prosecution's certification is not supported by the record before us.

Officer Row, who was present when the March 18, 1987, statement was made, and also at the May 29, 1987, interview, testified that the statements given by Mounts on March 18, 1987, and May 29, 1987, were basically the same. Officer Lancendorfer, who questioned Mounts on February 23, 1988, in Pueblo, said that he did not note any significant differences between what Mounts told him in that interview and Officer Row's reports containing Mounts' earlier statements.[2]

The February 23, 1988, statement arose in the context of a different investigation by the Pueblo Police Department involving

---

1. The trial court findings of fact and conclusions of law are set out as Appendix 1 to this opinion.

2. Lancendorfer contacted Row after he talked to Mounts. Row confirmed that Mounts had cooperated in the Rouillard homicide investigation. Lancendorfer then asked Row to send him any reports so that he could review them and file a report if there were any deviations from what Mounts had told him. According to

Lancendorfer, a report was not necessary because there were a few differences, but the basic story was the same. The record shows that although Mounts omitted some information about the murder when he was talking to Lancendorfer, he did not tell Lancendorfer anything that he had not previously told Row, and that any differences in the story were insignificant.

allegations that Mounts had threatened a police informant. Mounts denied the allegations and said that he was a police informant in a pending murder prosecution in Douglas County, and would be glad to cooperate with the police. Mounts then related the same facts about the murder that he had repeatedly made to police officers in Douglas County. The February 23, 1988, statement, then, does not supplement the prosecution's case.

■ In addition, the May 29, 1987, statement was suppressed by the trial court prior to the first interlocutory appeal, and the prosecution stated in its opening brief in *Mounts I* that it was not appealing the suppression of that statement. This court cannot review an issue not raised by the prosecution in the first interlocutory appeal. Since the prosecution did not contest the suppression of the statement in the first interlocutory appeal, it cannot be raised in this appeal. *See Sanchez v. State*, 730 P.2d 328 (Colo.1986). On remand, the trial court reviewed the May 29, 1987, statement and entered a second suppression order. Despite the trial court's issuance of a second suppression order, the first suppression order stands unchallenged and the time has elapsed for an appeal of that order.[3]

Accordingly, we dismiss the appeal.

### APPENDIX 1

#### *May 29, 1987, Statements*

This court previously found that on May 29, 1987, Officers Adkisson and Row interviewed Mounts while he was in custody. The testimony showed that Mounts' attorney, Lee, had been contacted prior to the interview and had given consent to the interview. Mounts, however, was not represented by counsel at the interview. Prior to the interview, Mounts was given a *Miranda* advisement. He did not ask for an attorney.

Officer Adkisson testified that the reason he gave Mounts the *Miranda* advisement was because Mounts would be interrogated. Officer Adkisson stated that he felt the interview would be an interrogation because the "deal was in question" and he "wanted things cleared up." At this time, Adkisson and Row regarded Mounts as "a suspect" because he "failed the polygraph" and Officer Row had received additional information about the homicide from witnesses Correa and Espinoza which cast doubt on Mounts' story.

Although Row testified that he explained his concern about the results of the polygraph to Mounts, neither Row nor Adkisson told Mounts that there were changes in the "agreement" or that "he was no longer operating under the agreement." Row further testified that Mounts was always cooperative.

This court previously concluded that Mounts was not shown to have validly waived his rights to counsel and to remain silent during the interrogation because he was not informed of the status of the cooperation agreement, that he waived his rights under the inducement of the agreement, that the officers had effectively waived Mounts' right to counsel for him, Mounts' youth and the ineffective assistance of counsel. The Colorado Supreme Court determined in *Mounts, supra*, that the promises made by the prosecution were solicited by Mounts himself; that Mounts' youth did not prevent him from exercising independent judgment and that the ineffective assistance of counsel is to be discounted since Mounts knew all of the relevant facts.

Under these circumstances, the issue remains whether the defendant's ignorance of the status of the cooperation agreement, i.e., whether he was in jeopardy and the officers' effectively waiving the presence

---

**3.** In reliance on *People v. Lewis,* 659 P.2d 676 (Colo.1983), the prosecution contends that a suppression order is interlocutory in nature and may be reconsidered by the trial court prior to a final judgment. *People v. Lewis* does not stand for that proposition. *People v. Lewis* held that a denial of a suppression order may be reconsidered upon motion when the motion is predicated upon a representation that a substantial change in the law or constitutional principles affecting the admissibility of the evidence has occurred. *Id.* at 680.

of Mounts' counsel precludes a finding of a valid waiver.

This court adheres to its previous findings: the officers did not tell Mounts that he was now a suspect instead of a witness. They further did not tell him that the agreement was no longer in effect or that the "agreement" was in question. Prior to questioning Mounts, Adkisson told Mounts that he had spoken with his counsel. Mounts' counsel had previously given the officers permission to question Mounts. Adkisson further testified that he had not told Mounts' attorney that he would advise Mounts prior to the interrogation. Adkisson also stated that he told Mounts that counsel would not be available during the interrogation. The evidence also showed that Mounts read and signed the advisement form. (People's Exhibit Number 24)

We fail to see how Mounts could have intelligently, knowingly and voluntarily waived his rights. First, the officers failed to inform Mounts or his attorney that the "agreement" was in question. Row's testimony, that Mounts was always cooperative, indicates that Mounts had no idea that he may now be a murder suspect. The evidence also shows that Mounts was continuing to cooperate under the "agreement" and that the failure to inform Mounts that the "agreement" may no longer be valid constitutes improper conduct by the authorities.

Secondly, Officer Adkisson told Mounts that his attorney would not be available during the questioning. Mounts did not have a meaningful opportunity to freely waive his right to counsel when he was told that the officers had procured his counsel's permission for the interview and that his counsel would not be available. In effect, the officers waived Mounts' right to counsel for him. Mounts would also not necessarily be aware that he should have an attorney present because on several previous occasions he had given unmirandized statements to the authorities without the presence of counsel.

The prosecution has therefore failed to show that Mounts' waiver of his right to remain silent and his right to counsel were knowingly and intelligently relinquished. The waiver of rights was not shown to be valid.

Order the Motion to Suppress the Statements of May 29, 1987 granted.

### February 23, 1988, Statements

This court adheres to its previous findings: On February 23rd Mounts spoke with Officer Lancendorfer at the Pueblo Police Department. At the time Mounts was an inmate at Rocky Mountain Correctional Community. He was contacted for the interview by Detective Andrew at Kirby Vacuum. After getting a pass from the client services coordinator at R.M.C.C., Mounts went to the police department.

Lancendorfer did not give Mounts an advisement of his rights prior to the interview. Adkisson testified that if Lancendorfer found that Mounts had something to do about threatening the police informant, something would be done. During the interview Mounts stated that he had been granted immunity in the death of Rouillard and proceeded to tell Lancendorfer about the case.

Lancendorfer testified that if Mounts asked to leave, he would have been allowed to leave. Lancendorfer further told Mounts that Mounts was not a suspect and not under arrest, but wanted to speak to him as a witness. Judith Davies, however, testified that a convicted inmate at R.M.C.C. is in custody when he leaves the facility.

*Miranda* warnings are required when a person is in custody and subject to interrogation. *Miranda, supra.* "Interrogation is custodial when it is initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. The question of custody turns on an objective assessment of whether a reasonable person in the defendant's circumstances would have believed that he was free to leave the officer's presence." *People v. Thiret*, 685 P.2d 193 (Colo.1984). The question of custody typically is determined by considering several factors. *Id.*

We find it unnecessary to consider the list of factors including whether Mounts went to the station voluntarily. The determinative factor in this instance is that Mounts was in custody at Rocky Mountain Community Corrections. The testimony also showed that Mounts was in custody whenever he left R.M.C.C. Mounts was, therefore, in custody when he went to the Pueblo Police Department.

Mounts was also subject to an interrogation. The inquiry is whether Mounts was subject to self-incrimination when asked questions. [Citation Omitted]. Adkisson testified that if, during the conversation, it was determined that Mounts had been threatening the informant, "something would be done." He further stated that in some cases it is a crime to make threats. We find that this constitutes an interrogation requiring an advisement. *Miranda, supra.* Because no advisement was given, suppression is warranted.

Order the Motion to Suppress the Statements of February 23, 1988, granted.