The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Stephen Andrew MacCALLUM,
Defendant–Appellee.

No. 96SA124.

Supreme Court of Colorado,
En Banc.

Sept. 23, 1996.

Alexander M. Hunter, District Attorney, Twentieth Judicial District, William F. Nagel, Appellate Chief Deputy District Attorney, Steven Louth, Deputy District Attorney, Boulder, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Steven K. Jacobson, Deputy State Public Defender, Boulder, for Defendant–Appellee.

Justice HOBBS delivered the Opinion of the court.

This interlocutory appeal is brought, pursuant to section 16–12–102(2), 8A C.R.S. (1996 Supp.), and C.A.R. 4.1, by the District Attorney for the Twentieth Judicial District challenging various rulings of the trial court suppressing evidence in connection with a case alleging vehicular homicide while the defendant, Stephen Andrew MacCallum (MacCallum), was driving under the influence of alcohol, and other related offenses.

The trial court found that officers did not have probable cause to administer blood alcohol tests of MacCallum and therefore suppressed the test results. The court also suppressed any and all statements MacCallum made to officers while hospitalized and during transport to jail, based on Crim. P. 5 (Rule 5).[1] In addition, statements made by MacCallum to transporting officer Jon Judson (Judson) were suppressed under *Miranda*.[2]

We reverse the suppression orders, except for that part of the trial court's order which suppressed, under *Miranda*, the contents of the conversation between MacCallum and Judson on the day of transport. As to that conversation, we do not address the prosecution's challenge to the suppression order under *Miranda* because the record does not convince us that any statements made to Judson are a substantial part of the proof of the charge pending against MacCallum within the meaning of C.A.R. 4.1(a). Finally, we remand to the district court for the purpose of making additional findings of fact and conclusions of law regarding *Miranda* issues implicated by any statements MacCallum made to police officers other than Judson while in the hospital, if the prosecution identifies such statements as part of its proof in the case.

I.

At mid-day on August 18, 1995, approximately fifteen miles north of the city of Golden, a Nissan pickup truck proceeding northbound on Highway 93 towards Boulder swerved into the southbound lane and collided head-on with a Toyota pickup truck. The

---

1. The trial court also suppressed a whiskey bottle, one-fifth full, and other evidence gathered pursuant to a warrantless search several months after the accident. The prosecution listed, but abandoned, this issue on appeal, and we do not consider it.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

driver of the southbound vehicle died as a result of the impact and fire.

MacCallum was taken unconscious from the wrecked northbound Nissan to Vista Medical Hospital. At the scene, investigating officers interviewed witnesses who were driving behind the Nissan truck. Trooper Robert Kropp (Kropp) of the Colorado State Patrol testified that he and other officers were told by witnesses John and Jennifer Johnson (the Johnsons), within ten to fifteen minutes of the collision, that they had followed the Nissan truck approximately fifteen miles from the Golden area. The Johnsons reported that the driver of the Nissan was "tailgating ... off on the shoulder once or twice," and "driving erratically the whole time, varying speeds." The Johnsons "watched him make a bad pass on the double yellow and impact with the southbound truck." On the basis of the dangerous driving they observed, the Johnsons said that they "believed that the driver was intoxicated."

Harold M. Tyus (Tyus) testified at the suppression hearing that he witnessed the collision when driving northbound on Highway 93 and spoke to officers at the scene. This conversation was later reduced to a sworn statement. Kropp recalled that Tyus stated at the scene that the driver of the Nissan was "tailgating him ... speeding up and slowing down, leaving his lane, attempting to pass, not pass, so on, so forth." Around Mile Marker 13, the "driver of the blue Nissan truck passed him over that double yellow and impacted with the southbound pickup truck."

Kropp's investigation included looking inside the Nissan. He saw a prosthetic leg on the driver's seat. He said he detected the odor of an alcoholic beverage and also smelled radiator fluid and gasoline. There were no visible alcohol containers.

Officers made arrangements with Vista Hospital to take two blood samples. The first was taken from MacCallum approximately two hours after the accident, the second sample was taken thereafter. The respective test results showed 0.145 and 0.117 grams of ethyl alcohol per 100 milliliters of blood.

After emergency treatment at Vista Hospital, MacCallum was hospitalized at Denver General Hospital from August 18, 1995, to September 7, 1995. For the first fifteen days MacCallum was in the intensive care unit. After MacCallum was released from intensive care, a police guard was posted outside the door of his hospital room during the duration of his hospitalization. MacCallum was transported from Denver General Hospital to the Boulder County jail on the afternoon of September 7, 1995, and was given his Rule 5 advisement in court on the following day.

When Judson, of the Colorado State Patrol, walked into MacCallum's hospital room on the day of transport, he introduced himself and placed MacCallum under arrest. A brief conversation ensued regarding the prosthetic leg, which had been brought to the hospital by MacCallum's brother from the accident scene. Judson asked MacCallum whether he wished to wear the prosthetic device. MacCallum responded that the artificial leg had been broken in the accident and could not be worn.

On the way from Denver General Hospital to the Boulder County jail, Judson and MacCallum engaged in conversation. Judson quoted MacCallum as saying "he was very sorry for what he had done, that he wished it wouldn't have happened. He felt very bad for the family." Additionally, MacCallum was concerned about being in jail because of his physical condition. He raised his shirt to show Judson his injury explaining that he was worried because a rib protecting his heart had been removed. "I asked him how that happened, and he said that ... the doctor had told him that's where he struck the steering wheel of the vehicle. That's why they had to remove the rib." MacCallum asked Judson what charges would be filed against him. Judson told MacCallum "driving under suspension, passing on a yellow line, driving under the influence" and vehicular homicide. Brief conversation about vehicle registration and insurance for the Nissan, and MacCallum's concern about personal effects he left in the Nissan, also occurred.

At the suppression hearing, Judson testified that it was not his practice to interrogate prisoners during transport. He engaged in conversation with MacCallum because he "was feeling kind of sorry for him for the predicament he was in." MacCallum testified at the suppression hearing but provided scanty detail about the conversation or the attendant circumstances in the hospital room or patrol car. The record of the conversation between MacCallum and Judson, and the context in which that conversation occurred, consists primarily of Judson's direct and cross-examination testimony at the suppression hearing.

At no time prior to the Rule 5 in-court advisement was MacCallum advised of his rights to remain silent and to have the assistance of counsel, and that any statements he might make could be used as evidence against him.

The trial court suppressed the blood test results as having been obtained without probable cause, ruling that Kropp could not have smelled alcohol because of the anti-freeze, smoke, and gasoline fumes at the scene of the accident. The court concluded that evidence of erratic driving was not sufficient to constitute probable cause for an alcohol-related offense. The court also determined that, because police officers were posted outside his hospital door, MacCallum was under arrest four or five days prior to his transport to Boulder County jail on September 7, that he could have been afforded a Rule 5 hearing while in the hospital, and that undue delay in giving the Rule 5 advisement had occurred. Accordingly, under Rule 5, the court suppressed MacCallum's statements in the hospital and during transport. The court further ruled that MacCallum's conversation with Judson on the day of transport must be suppressed under *Miranda*.

3. MacCallum was charged under § 18–3–106(1)(b)(I), –(4)(a), 8B C.R.S. (1996 Supp.), which relates to vehicular homicide. The statute states in relevant part that:

    (4)(a) If a law enforcement officer has probable cause to believe that any person was driving a motor vehicle in violation of paragraph (b) of subsection (1) of this section, such per-

## II.

First we examine whether officers had probable cause to arrest MacCallum for an alcohol-related driving offense,[3] whether there existed to investigating officers a clear indication that the blood samples, if taken, would provide evidence of intoxication, whether exigent circumstances existed for taking the blood samples, and whether the blood tests were reasonably conducted.

In *People v. Sutherland,* 683 P.2d 1192 (Colo.1984), we enumerated the criteria that must be established before obtaining a blood sample involuntarily from a putative defendant:

First, there must be probable cause for the arrest of the defendant on an alcohol-related driving offense. Second, there must be a clear indication that the blood sample will provide evidence of the defendant's level of intoxication. Third, exigent circumstances must exist which make it impractical to obtain a search warrant. Fourth, the test must be a reasonable one and must be conducted in a reasonable manner.

*Id.* at 1194; *accord, e.g., People v. Reynolds,* 895 P.2d 1059, 1060 (Colo.1995).

The trial court correctly determined that probable cause to arrest the defendant for an alcohol-related driving offense is the "threshold requirement before a blood sample may be involuntarily extracted from a defendant." In ruling that probable cause did not exist, the court stated that "[i]t is clear from the cases that something more than aberrant driving behavior is necessary to support a probable cause finding." The trial court also found that Kropp could not have smelled an alcoholic beverage in the truck due to the overpowering odors of anti-freeze and gasoline at the scene.

son, upon the request of the law enforcement officer, shall take … any test or tests of such person's blood, breath, saliva, or urine for the purpose of determining the alcoholic or drug content within his or her system.
We do not address whether this section conforms to constitutional norms or to the requirements established in *People v. Sutherland,* 683 P.2d 1192 (Colo.1984), because we conclude that all

■ Findings of fact by a trial court will not usually be disturbed on appeal if they are supported by competent evidence in the record. *People v. Jordan*, 891 P.2d 1010, 1015 (Colo.1995); *accord People v. LaFrankie*, 858 P.2d 702, 706 (Colo.1993). There is competent evidence in the record to support the finding that the investigating officer was unable to smell alcohol in the truck due to the mix of burning rubber, gas, radiator fluid, smoke, and other fluids discharged due to the collision.

Accordingly, we must determine whether the evidence relating to the circumstances of the accident was sufficient to establish probable cause for obtaining blood samples and arresting MacCallum for an alcohol-related driving offense.[4]

## A.

This court has stated that probable cause to arrest exists "when the facts and circumstances known to the arresting officer are sufficient to warrant the belief by a reasonable and prudent person, in light of that person's training and experience,[5] that an offense has been committed and the defendant committed it." *People v. Thompson*, 793 P.2d 1173, 1175 (Colo.1990); *accord, e.g., People v. Roybal*, 655 P.2d 410, 413 (Colo. 1982).

In evaluating probable cause, we have enunciated that "probability, not certainty, is the touchstone of reasonableness under the fourth amendment and that probable cause involves probabilities similar to the factual and practical questions of everyday life upon which reasonable and prudent persons act." *Thompson*, 793 P.2d at 1175. Probable cause may be based on the personal observations of the arresting officer, or on facts provided to the arresting officer by fellow officers or others. *Id.* We have stated that the proper

test for determining probable cause, in addition to the above-mentioned test, includes an exploration into the totality of the circumstances known to the officer at the time of arrest. *People v. Washington*, 865 P.2d 145, 147 (Colo.1994).

This court has addressed the issue of probable cause to make an arrest for alcohol-related driving offenses in a number of cases. In *People v. Roybal*, 655 P.2d 410 (Colo. 1982), we held that there was no probable cause to arrest the defendant for driving under the influence of intoxicating liquor where the sole evidence about the nature of the accident, *id.* at 412 n. 5, was "that it was a 'pretty serious accident' and that the defendant had 'an odor of alcoholic beverage about him,'" *id.* at 412. "The record is barren of evidence that the collision occurred as a result of misconduct by the defendant." *Id.* at 413. The record simply reflected that· an accident occurred, "the defendant was driving one of the cars involved, and he had an odor of alcoholic beverage about him." *Id.* In addition, there were no witnesses to the defendant's driving or to the accident. This evidence alone was held insufficient to sustain probable cause.

The current case is distinguishable from *Roybal* because here there were three eyewitnesses to the aberrant and dangerous driving. In particular, witness Tyus observed the driver attempt to pass him over a double yellow line and strike the southbound vehicle head-on after tailgating the Tyus vehicle and driving extremely erratically for a number of miles. MacCallum, the occupant of the wrecked Nissan, was removed from the scene, while unconscious, for emergency medical treatment. There was no opportunity for officers and other observers to smell MacCallum's breath or see his eyes under the circumstances. During the emergency care his face was covered with an oxygen

---

four prongs of the *Sutherland* test have been satisfied in this case.

4. We have stated that the formal arrest of the defendant is not a prerequisite to obtain a blood sample and have required only that there be probable cause to place the defendant under arrest before the blood sample is taken. *Sutherland*, 683 P.2d at 1195.

5. In *People v. Reynolds*, 895 P.2d 1059, 1063 (Colo.1995), we noted that "due consideration

must be given to a law enforcement officer's training and experience in determining the significance of an officer's observations in the context of probable cause." *See also* 2 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 3.2(c), at 38–39 (3d ed. 1996) ("The Supreme Court has made it clear that the expertise and experience of the officer are to be taken into account in applying the Fourth Amendment probable cause test.").

mask and he was intubated with a breathing apparatus.

The present case is also distinguishable from *People v. Reynolds,* 895 P.2d 1059, 1062 (Colo.1995), where we held that evidence of a one car accident buttressed by the driver's admission to drinking three beers six to nine hours prior to the accident did not meet the standard of probable cause. We stated that *"because there were no witnesses* to the speed and direction of the pickup truck before the accident, *there is no factual basis or evidence to conclude that Reynolds' accident occurred as a result of his misconduct* or due to his driving under the influence of alcohol." *Id.* (emphasis added). In that case, there was no evidence to suggest that Reynolds had driven recklessly, and there were no observations of physical symptoms or indications that Reynolds was intoxicated. *Id.*

In *People v. Shepherd,* 906 P.2d 607 (Colo. 1995), we held that investigating officers had probable cause to arrest the defendant on an alcohol-related offense when the evidence showed that the traffic accident resulted in death and serious injury, there was evidence that the defendant was at fault, empty beer cans were found near the accident scene, and there was an odor of alcoholic beverage on defendant's breath. *Id.* at 609. We found important the fact that the defendant, in that case, was at fault in causing the fatal accident, and that "in addition to the odor of an alcoholic beverage on Shepherd's breath, [the officers] had *other circumstantial evidence* that Shepherd had been drinking *and had caused the accident* by driving too fast for conditions." *Id.* at 610 (emphasis added). We thus concluded that the totality of the evidence, which included the circumstances of the accident, was sufficient to provide "the requisite probable cause to arrest [the defendant] for an alcohol-related driving violation, thereby warranting the administration of a blood test." *Id.*

Here, three eye-witnesses observed the driver's conduct of reckless and dangerous driving for a sustained period of time over the course of fifteen miles. The pattern of driving behavior that they witnessed was highly unusual and erratic. They observed the Nissan truck swerve, drive onto the shoulder, cross the double-yellow line, without attempting to pass, repeatedly tailgate the car in front of it, and speed up and slow down. The witnesses also observed the Nissan eventually attempt to make a bad pass over the double-yellow line which resulted in the accident that killed another motorist.[6] The witnesses stated their belief that the driver of the Nissan truck was at fault in causing the accident. Kropp also testified that, based on his investigation at the scene, he had concluded that the driver of the northbound Nissan pickup truck caused the accident.

In the current case, the totality of the facts and circumstances known to the investigating officers at the time was enough to support a finding of probable cause to arrest. At the time of the arrest the arresting officers were aware of the eye-witness observations of the extreme and prolonged reckless driving and that MacCallum caused the head-on collision. As a result, the arresting officers had a reasonable belief that the defendant was operating the vehicle under the influence of alcohol or drugs. We hold that the evidence was sufficient to warrant the belief by reasonable and prudent officers, in light of their training and experience, that a drug or alcohol-related driving offense had been committed and that MacCallum committed it.

### B.

The second prong of *Sutherland* requires that there must be a clear indication that the blood sample will provide evidence of the defendant's intoxication. This requirement has also been satisfied in this case. "It is important to note that this is different from the higher standard of requiring a clear indication that the defendant was intoxicated." *Shepherd,* 906 P.2d at 610. We have further

6. In *Reynolds* and *Roybal* we affirmed the respective suppression orders stating that no probable cause to arrest existed. However, in neither case was there any indication or evidence of the defendant's fault in causing the accident, nor were there witnesses to the driving prior to the accident or the accident itself.

held that "[i]n the *typical* alcohol or drug case, this clear indication requirement is easily satisfied by observations of the defendant's speech, gait, breath, appearance, and conduct." *People v. Milhollin,* 751 P.2d 43, 47 (Colo.1988) (quoting *People v. Williams,* 192 Colo. 249, 259 n. 13, 557 P.2d 399, 407 n. 13 (1976)) (emphasis added).

Under the circumstances of this case, we conclude that there was a clear indication that the blood samples from MacCallum would provide evidence of intoxication and the level thereof. By the time the officers arrived at the accident scene, MacCallum, who was unconscious, had already been moved to the hospital for emergency care. In addition, due to MacCallum's extensive injuries, the investigating officers were unable to utilize the more "familiar" techniques and indicia of intoxication such as observation of MacCallum's speech, gait, breath, appearance, and conduct. *See Reynolds,* 895 P.2d at 1062.

This is not the typical alcohol or drug case, and the clear indication requirement discussed in *Milhollin* must, therefore, be based on additional observations and considerations of both the investigating officers and the witnesses to the accident. MacCallum's driving was so noticeably reckless and erratic that three separate witnesses independently concluded that the reckless driving they observed was probably the result of driver intoxication. Two law enforcement officers at the scene, based on their training and experience and their hearing of the eye-witness accounts, concluded that the accident probably involved an intoxicated driver. The investigating officers, in light of the witnesses' accounts, even in the absence of evidence concerning MacCallum's appearance and behavior after the accident, had a clear indication, based on all of the circumstances of the accident and on the nature of the dissipating blood-alcohol evidence, that evidence of the level of intoxication or drug abuse would be found upon obtaining a blood sample, and that the evidence would be relevant to a crime for which MacCallum could be charged.

## C.

The third prong of *Sutherland* requires that exigent circumstances exist which make it impractical to obtain a search warrant. We recognized in *Sutherland* that "the need for the blood sample arises out of the fact ... 'that the percentage of alcohol in the blood begins to diminish shortly after drinking stops.'" *Sutherland,* 683 P.2d at 1195 (quoting *Schmerber v. California,* 384 U.S. 757, 770, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908 (1966)).

Due to the inherent nature of a blood alcohol test, we have stated that this requirement is satisfied "when time has elapsed while the driver is transported to a hospital and the investigating officer is detained at the accident scene." *Shepherd,* 906 P.2d at 610 (quoting *Milhollin,* 751 P.2d at 49). In the present case, MacCallum was transported to the hospital in critical condition while Kropp and other investigating officers remained at the accident site to investigate the cause of the accident, interview witnesses, and direct traffic. Based on these facts, exigent circumstances existed which made it impractical for the officers to obtain a search warrant.

## D.

The fourth *Sutherland* requirement is that the blood test be a reasonable one and that it be conducted in a reasonable manner. In determining reasonableness, the court should consider the lack of risk and the highly effective results of the blood-alcohol test. *Sutherland,* 683 P.2d at 1194; *accord, e.g., Milhollin,* 751 P.2d at 49. In addition, if the blood is extracted in a hospital environment, and according to accepted medical practices, this requirement will be satisfied. *Milhollin,* 751 P.2d at 49. MacCallum's blood was extracted in a hospital by medical professionals, pursuant to accepted medical practices. Therefore, we conclude that the blood alcohol test was both reasonable and conducted in a reasonable manner.

We conclude that all four prongs of the *Sutherland* test have been met in this case. The investigating officers had probable cause to arrest MacCallum for an alcohol-

related offense, and they had a clear indication that the blood sample would provide evidence of his level of intoxication. In addition, exigent circumstances existed which made it impractical for the officers to obtain a search warrant prior to the blood extraction. The blood tests were reasonable and performed in a hospital according to accepted medical practices. Therefore, the blood samples obtained from MacCallum were improperly suppressed.

## III.

The People also seek reversal of the trial court's orders suppressing any statements which MacCallum made while hospitalized and during his transport from Denver to Boulder. The trial court based this suppression order on Rule 5. The trial court also relied on *Miranda* to suppress statements of MacCallum to Judson during transport on September 7, 1995. We reverse, except we let stand under C.A.R. 4.1(a) the suppression under *Miranda* of the interchange between MacCallum and Judson.

## A.

The suppression of any statements MacCallum made while hospitalized and during transport was erroneously based on Rule 5. That rule provides that: "If a peace officer or any other person *makes an arrest,* either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district court." Crim. P. 5(a)(1) (emphasis added). This provision clearly states that Rule 5 applies only if a peace officer or other person has effected an arrest. Rule 5(a)(1) does not apply where an arrest has not been made. *People v. Turtura,* 921 P.2d 40, 42 (Colo. 1996) ("Because we conclude that there was no arrest, Crim. P. 5 was not implicated."); *see also People v. Raymer,* 662 P.2d 1066, 1070 (Colo.1983) ("Crim. P. 5(a)(1) requires a peace officer making an *arrest* to take the *arrested* person" before a judge.) (emphasis added).

■ In its suppression order the district court concluded that, because police officers were posted at MacCallum's hospital door

twenty-four hours-a-day, MacCallum had been placed under arrest. We disagree. The record discloses that the purpose of the guard being posted during the last five days of MacCallum's hospitalization was for the purpose of placing MacCallum under arrest upon release from medical care so that he could be transported to jail and be given his Rule 5 advisement. MacCallum was first placed under arrest by Judson at around noon on September 7, 1995, in the course of transfer from Denver to Boulder. Prior to September 7, MacCallum was not medically able to be released from the hospital. On September 8, 1995, MacCallum was taken to his Rule 5 advisement proceeding. Undue delay between the arrest and the Rule 5 proceeding is not shown by this record.

## B.

Under *Miranda,* the trial court also suppressed MacCallum's statements made to Judson on the day of transport.

There is no dispute that on September 7, 1995, MacCallum was in the custody of Judson, that a conversation between the two occurred, and that no *Miranda* advisement was given. On this basis, the trial court concluded that "[t]he District Attorney has not met his burden of showing that the statements made were unsolicited and not based on the Officer's questioning of the Defendant." The court concluded that the statements must be suppressed under *Miranda.*

■ In connection with this interlocutory appeal, the prosecution certified, as required by C.A.R. 4.1(a), that this appeal "is not taken for purposes of delay and the evidence [suppressed] is a substantial part of the proof of the charge pending against the defendant." In prior cases we have refused to address substantive issues raised by the prosecution when our independent review of the record convinces us that defendant's statement does not form a "substantial part" of the proof which may be offered against the defendant. *See People v. Mounts,* 801 P.2d 1199, 1202, 1203 (Colo.1990); *accord People v. Valdez,* 621 P.2d 332, 333 (Colo.1981). "[T]he prosecution's brief and the record must support the certification that the state-

ments are a substantial part of the evidence." *Mounts,* 801 P.2d at 1202 (citing *People v. Garner,* 736 P.2d 413, 414 (Colo.1987)).

Here, our independent review of the record and the briefs convinces us that any statements MacCallum made to Judson on the day of transport do not form a substantial part of the proof which may be offered against MacCallum. Evidence of the statements MacCallum made to Judson on the day of transport consists almost entirely of Judson's testimony. Judson described the conversation as a non-material, benign interchange meant to solace MacCallum: "I talked to him in a quiet voice. I tried to answer his questions as best I could, to—to, you know, to be more consoling than any-thing. He was feeling bad."

Although there was some brief interchange regarding the vehicle registration for the wrecked Nissan, personal items MacCallum had left in the vehicle, MacCallum's physical condition, and MacCallum's concern for the family of the victim of the car accident, Judson was so unconcerned about the significance or substance of the conversation that he did not take any notes or file a report. Not until two months later did Judson write a half-page document about the conversation. Defense counsel engaged in the following dialogue with Judson at the suppression hearing:

Q. You didn't hear something that caused you to think, gee, this is important stuff. I'll run back down to the office, type up a report on exactly what I just got told. That didn't happen, did it?

A. No, Sir, it didn't.

▇ The prosecution's opening and reply briefs here do not identify which statements, if any, are a substantial part of the proof of the charge pending against MacCallum, nor does the record of this conversation so demonstrate. Thus, we do not address the prosecution's claim that the suppression of MacCallum's statements to Judson under *Miranda* was improper. *See Mounts,* 801 P.2d at 1202.

The trial court did not address whether any statements MacCallum made in the hospital, other than those made to Judson, were made as a result of custodial interrogation in violation of *Miranda.* The suppression order dealing with these statements was based entirely on Rule 5.

▇ If MacCallum made statements to Judson in the hospital as a result of custodial interrogation without the necessary *Miranda* advisement, those statements must be suppressed. *People v. Horn,* 790 P.2d 816 (Colo. 1990). "An interrogation under *Miranda* is defined as any words or actions on the part of the police officer that the officer 'should know are reasonably likely to elicit an incriminating response from the suspect.'" *People in Interest of J.C.,* 844 P.2d 1185, 1189 (Colo.1993) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)). The determination of whether interrogation occurred "turns primarily 'upon the perceptions of the suspect, rather than the intent of the police.'" *People v. Thomas,* 839 P.2d 1174, 1178 (Colo.1992) (quoting *Innis,* 446 U.S. at 301, 100 S.Ct. at 1689–90).

In *People v. Haurey,* 859 P.2d 889 (Colo. 1993), however, we stated that "*Miranda* does not prohibit the evidentiary use of unsolicited statements made by a person in custody prior to a proper advisement even though such statements are incriminating." *Id.* at 894; *see also United States v. Muniz,* 1 F.3d 1018, 1022 (10th Cir.1993) ("If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible.").

▇ "The issue of custodial interrogation is essentially a factual question that requires a trial court to consider the totality of circumstances ... then to assess the credibility of witnesses ... and finally to apply the correct legal standard to the facts as found by the court." *People v. Hamilton,* 831 P.2d 1326, 1331 (Colo.1992). We must defer to the trial court's findings on these factual issues unless the findings are not adequately supported by the record or if the trial court applied the incorrect legal standard. *Id.; accord People v. Trujillo,* 784 P.2d 788, 792 (Colo.1990).

Although the trial court ruled that MacCallum while hospitalized was in custody because a guard was posted outside his room twenty-four hours-a-day, and was questioned in the hospital by police officers prior to the day of transport, the court made no findings of fact or conclusions of law concerning custodial interrogation issues under *Miranda* with regard to any such statements. Appellate courts are not the appropriate forum for an analysis of credibility issues or for the resolution of disputed facts. *See Turtura,* 921 P.2d at 44. On remand, if the prosecution, as a part of its proof in the case, identifies statements[7] made by MacCallum while hospitalized to officers other than Judson, the court shall make findings of fact and conclusions of law regarding the *Miranda* issues.[8]

### IV.

Accordingly, we reverse the order suppressing the blood test results and the order, under Crim. P. 5, suppressing statements MacCallum made while hospitalized and during transport, except for the court's suppression under *Miranda* of the conversation between MacCallum and Judson on the day of transport which we let stand in view of C.A.R. 4.1(a). We remand for further proceedings consistent with this opinion regarding *Miranda* issues as to any statements MacCallum made to police officers, other than Judson, while hospitalized.

VOLLACK, C.J., does not participate.

---

7. In *People v. Haurey,* 859 P.2d 889 (Colo.1993), we concluded that:

> The court did not identify particular statements as falling into one category or the other [those which are suppressed and those which are not], nor is the evidence so clear as to make such a classification apparent from the record. As a result, it is necessary to remand the case to the district court so that it may apply the proper standards with respect to interrogation and may identify the statements suppressed as a result of the application of these standards. *Id.* at 894.

8. *See People v. Mack,* 895 P.2d 530, 537 (Colo. 1995) ("In the absence of sufficient findings of fact and conclusions of law by the district court concerning the circumstances under which Mack's statements were made, our appellate function is hindered.").